**Alexandria**

BAO QUOC DOAN

v.

COMMONWEALTH OF VIRGINIA

No. 0280-91-4

Decided September 15, 1992

COUNSEL

Christopher C. Nolan (Adams, Porter & Radigan, Ltd., on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a jury trial, Bao Quoc Doan, appellant, was convicted of statutory burglary, two counts of robbery, two counts of using a firearm in the commission of a felony, and two counts of abduction. The trial court, in accordance with the jury's recommendation, sentenced Doan to a total of sixty years imprisonment. On appeal, Doan contends: (1) the trial court erred in ruling that guilty verdicts obtained in a former jury trial were admissible to impeach his credibility where no final order had been entered in the former trial; (2) the

trial court erred in ruling admissible a co-defendant's plea agreement that showed the witness' conviction for crimes unrelated to those at issue in Doan's trial; (3) the trial court erred in denying his motion to suppress the in-court identification of him by a victim; (4) the evidence was insufficient to support his conviction for statutory burglary; and (5) the trial court erred in excluding a transcript of testimony given by a defense witness at an earlier hearing when the witness was incarcerated at an unknown location at the time of trial.

On March 19, 1990, four armed Asian men entered the residence at 4742 Farndon Court in Fairfax County, where Nguyet O'Rourke (Mrs. O'Rourke) lived with her two daughters. At approximately 8:00 a.m. that morning, Mrs. O'Rourke put her nine-year-old daughter on the school bus. She then went to the kitchen and opened the sliding glass door to let her dogs out in the yard. She did not close the door. Approximately five or ten minutes later, Mrs. O'Rourke heard a noise and saw four men run through the sliding glass door in the kitchen. Two men grabbed Mrs. O'Rourke while the other two men ran past her and went upstairs. One of the men who went upstairs, later identified by Mrs. O'Rourke as Doan, pulled his shirt up to his face as he passed so that only his eyes were showing.

One man put a gun to Mrs. O'Rourke's head and told her to "[g]et down." Another man helped to pull her down to the floor. The two men told her to "sit down and not to resist, and they will take what they want and they will leave." They warned Mrs. O'Rourke that if she tried to resist, she would get hurt. The two men pulled her to the stairway. They yelled upstairs and Doan came down to help them pull her upstairs. Doan had a green and white shirt covering his face. After the men pulled Mrs. O'Rourke upstairs to her bedroom, they placed her face down on her bed and tied her hands and feet together. They repeatedly asked her where the valuables were kept in the house.

The two men who ran upstairs entered the bedroom of Chi O'Rourke (Chi), Mrs. O'Rourke's twenty-six-year-old daughter. Chi, who had been asleep, was awakened by a loud noise. One man placed a gun at her head and told her to "shut up, or I'll blow your head off." Then, two men forced her to turn over on her face and tied her up. One man threatened to have sexual intercourse with her and sexually assaulted her. The men repeatedly asked Chi where her mother kept the cash.

The men took jewelry that both Mrs. O'Rourke and Chi were wearing. The robbers were in the house for approximately forty-five minutes before fleeing with cash and jewelry.

## I.

Doan contends that the trial court erred in ruling *in limine* that guilty verdicts obtained in a prior jury trial were admissible to impeach his credibility.[1] Doan maintains that our holding in *Dowell v. Commonwealth*, 12 Va. App. 1145, 408 S.E.2d 263 (1991), *aff'd en banc*, 14 Va. App. 58, 414 S.E.2d 440 (1992), prohibits the Commonwealth from using a guilty verdict obtained in a prior jury trial to impeach his credibility where no final order of conviction has been entered. Because Doan did not testify at trial, the Commonwealth did not use the prior guilty verdicts to impeach his credibility. Doan nonetheless contends that the trial court's ruling essentially deprived him of the right to choose whether to testify. We find that our consideration of this issue is barred by Doan's failure to testify at trial. Accordingly, we do not reach the merits of the issue.

In order to preserve for review the claim of improper impeachment by a prior conviction, a defendant must testify at trial. *Reed v. Commonwealth*, 6 Va. App. 65, 69, 366 S.E.2d 274, 277 (1988). In *Reed*, the defendant sought a pretrial ruling on the admissibility of the testimony of witnesses that would prove the defendant's prior conviction was based on perjured testimony. Although "a criminal defendant whose testimony is impeached by evidence of a prior felony conviction has the right to introduce limited evidence to show that the prior conviction was obtained on the basis of perjured testimony," *id.* at 68, 366 S.E.2d at 276, the trial court ruled that the evidence was inadmissible. Reed never testified at trial; therefore, evidence concerning his prior conviction was not introduced to impeach his credibility. Although Reed's failure to take the stand precluded the introduction of the evidence the trial court had ruled inadmissible, Reed argued on appeal that the trial court's pretrial ruling denied him both the right to call for evidence in his favor and the right to testify.

[1] In a prior trial, Doan entered pleas of not guilty to ten felony charges. The jury returned verdicts of guilty to all ten charges, and the matter was set over for sentencing and post-trial motions. At the time of the hearing on Doan's motion *in limine*, the trial court in the former matter had not entered a final order.

■ We held that Reed, by not testifying at trial, failed to preserve for review his challenge to the trial court's ruling. "[B]ecause Reed did not testify, we cannot determine whether the prosecutor would have used the prior conviction, or whether the judge would have allowed Reed to explain his contention as to how it was improperly obtained." *Id.* at 69, 366 S.E.2d at 277. Indeed, "[u]nless the defendant testifies, '[a]ny possible harm flowing from [a trial court's] ruling permitting impeachment by a prior conviction is wholly speculative.' " *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction. If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction.

*Luce*, 469 U.S. at 42 (holding that a defendant must testify at trial in order to be entitled to appellate review of the trial court's *in limine* ruling permitting the use of a prior conviction to impeach his credibility).

■ Doan alleges, as did the appellant in *Reed*, that the trial court's ruling essentially deprived him of the right to testify at trial because the adverse ruling would have permitted the use of prejudicial impeachment evidence. However, we rejected this contention in *Reed*:

"[A]n accused's decision whether to testify 'seldom turns on the resolution of one factor' [and] a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify. . . . Requiring . . . a defendant to testify [to preserve the issue for appellate review] will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to 'plant' reversible error in the event of conviction."

*Reed*, 6 Va. App. at 69, 366 S.E.2d at 277 (quoting *Luce*, 469 U.S. at 42 (citations omitted)). Consequently, although Doan contends that the adverse pretrial ruling affected his decision not to testify at trial, Doan "may not raise the issue of improper impeachment when none occurred." *Id.*

Doan's reliance on *Wimer v. Hinkle*, 379 S.E.2d 383 (W. Va. 1989) is misplaced. In *Wimer*, the plaintiff in a civil trial made a motion *in limine* to exclude certain testimony under West Virginia's Deadman's Act. The court ruled that the testimony was admissible, and the witness testified at trial. Because the witness whose testimony was at issue testified at trial, the objectionable testimony was introduced, leaving no room for the speculation described in *Luce*. Thus, the reasoning of the West Virginia court in *Wimer* is inapplicable here.

Doan further contends that the decision in *Reed* is not controlling because it was based upon an interpretation of the Federal Rules of Evidence. Doan urges us to limit *Reed* to impeachment issues involving federal court trials because *Luce*, upon which we relied in *Reed*, was based on the Federal Rules of Evidence. Doan's contention is without merit. In *Reed*, we found the analysis of the United States Supreme Court "persuasive and we adopt[ed] its reasoning to apply to our rules of evidence." *Reed*, 6 Va. App. at 69, 366 S.E.2d at 277. In light of this reasoning, Doan's proposed limitation of *Reed* is nothing less than an invitation to overrule *Reed*. We decline to do so.

Our holding in *Reed* specifies that a defendant must testify at trial in order to obtain appellate review of a claim of improper impeachment. The facts of this case fall squarely within that holding. Accordingly, we hold that Doan's failure to testify at trial precludes our review of his claim that the trial court erred in ruling that the guilty verdicts could be used to impeach his credibility.

## II.

Doan also contends that the trial court erred in admitting into evidence a co-defendant's plea agreement. The plea agreement listed the crimes and sentences Xuan Ho (Ho) received in three robbery cases, one of which was the robbery at the O'Rourke residence.[2] Doan asserts that the portion of Ho's plea agreement showing that Ho had been convicted of other crimes unrelated to the charges for which Doan was being tried should have been excluded because "it had no

---

[2] Ho, a co-defendant, was the prosecution's chief witness. Pursuant to a plea agreement, Ho had pled guilty to sixteen felonies for which he was to receive sentences totaling life plus one hundred and ten years. In exchange, Ho agreed to testify "fully and truthfully as to cases in which he is called as a witness." At trial, Ho, who had confessed to the robbery for which Doan was being tried, testified that Doan was one of the individuals who committed the robbery at the O'Rourke residence.

material or probative value in determining the guilt of [Doan]'' and was ''highly prejudicial.'' The essence of Doan's argument is that the challenged portion of the plea agreement was inadmissible because its probative value was outweighed by its prejudicial effect.

■ Our review of this issue is barred by Doan's failure to object to the admission of this document in evidence.

> Generally, a contemporaneous objection on stated specific grounds must be made in the trial court before an appellate court is authorized to review the question of admissibility of evidence. To be timely, an objection to the admissibility of evidence must be made when the occasion arises — that is, when the evidence is offered, the statement made or the ruling given.

*Harward v. Commonwealth*, 5 Va. App. 468, 473, 364 S.E.2d 511, 513 (1988) (citations omitted). Doan did not object at trial when the Commonwealth's attorney questioned Ho about the objectionable portions of the agreement. Moreover, Doan referred to the challenged portions of the agreement during his cross-examination of Ho. On re-direct, when the Commonwealth's attorney offered the plea agreement in evidence, the document was received in evidence without objection. We find that Doan's failure to object to the introduction of the agreement and his reference to that evidence during cross-examination constitute a waiver of this issue on appeal.

Although the court heard arguments on Doan's motion *in limine* to exclude certain portions of the plea agreement, we find that the court did not make a definitive ruling regarding the admissibility of the evidence.[3] Absent a ruling of the trial court *in limine*, Doan was obligated to object to the evidence at trial. Consequently, we find that Doan's pretrial challenge to the admissibility of the evidence is insufficient to permit our review.

Moreover, we find that the introduction of such evidence worked no prejudice to Doan. First, we find no support for Doan's suggestion that

---

[3] When Doan offered to show the court a copy of the plea agreement, the court declined stating, ''No. I'll take it up at the time.'' Although the court considered whether there was something in the plea agreement ''unduly prejudicial'' to Doan, it did not rule on the admissibility of the plea agreement. In fact, Doan even stated ''so perhaps I'm withdrawing that motion.'' The court then ruled: ''Okay. If you get into one of these areas . . . let's run it by the Court first so we don't end up with a mistrial.'' We find that these statements do not amount to a ruling on the admissibility of the document.

the jury considered the other unrelated crimes in its sentencing determination. The plea agreement does not disclose, on its face, any identifying information that would link Doan to the crimes for which Ho had pled guilty in accordance with his agreement with the Commonwealth. The fact that the jury recommended a sentence of sixty years for Doan's involvement in the O'Rourke robbery, when the plea agreement shows that Ho received life plus one hundred and ten years for three robberies, negates the possibility that the jury inferred from the agreement that Doan was involved in these other crimes. Second, Doan claims that the actual sentence Ho received was "distorted" in the plea agreement because the document failed to take into account the fact that Ho's eligibility for parole would, in fact, make his sentence much shorter. Doan cannot be heard to complain that the "distorted" sentence prejudiced him in the eyes of the jury when he addressed the issue of Ho's eligibility for parole in his cross-examination of Ho. Because the record shows that Doan was able to cross-examine Ho thoroughly with respect to the plea agreement, we find no prejudice.

### III.

Next, we must determine whether the trial court erred in denying Doan's motion to suppress Mrs. O'Rourke's in-court identification of Doan. Doan alleges that Mrs. O'Rourke's in-court identification of him at trial was "tainted" by the Commonwealth's attorney's impermissibly suggestive comments concerning where the defendant would be seated in the courtroom. Doan contends that these comments were so unduly suggestive as to create the likelihood of misidentification and, therefore, Mrs. O'Rourke's in-court identification of Doan at trial should have been suppressed.

We have consistently applied a two-part test to determine whether an in-court identification must be suppressed. *Curtis v. Commonwealth*, 11 Va. App. 28, 31, 396 S.E.2d 386, 388 (1990); *Miller v. Commonwealth*, 7 Va. App. 367, 372-73, 373 S.E.2d 721, 724 (1988); *Wise v. Commonwealth*, 6 Va. App. 178, 184, 367 S.E.2d 197, 200-01 (1988); *Hill v. Commonwealth*, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986). First, the court must determine "whether the identification process was unduly suggestive." *Curtis*, 11 Va. App. at 31, 396 S.E.2d at 388 (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). If the court finds that the identification process was unduly suggestive, then the court "next must determine whether the out-of-court identification

was nevertheless so reliable that no substantial likelihood of misidentification existed.'' *Id.*

The record reflects that on October 16, 1990, the day before a pretrial hearing, Mrs. O'Rourke and her daughter, Chi, viewed the courtroom. Referring to the defense table, one of them asked the Commonwealth's attorney, ''Is that where the defendant will sit?'' The Commonwealth's attorney replied, ''[N]ot necessarily, there may be another person sitting there . . . the defense may put somebody else in his chair for identification purposes.''[4] At the hearing the next day, October 17, 1990, Mrs. O'Rourke told the prosecutor and Investigator Farrell that she recognized Doan as one of the robbers.

Doan claims that the prosecutor told the witness where the defendant would be seated in the courtroom. He alleges that ''[a]s a practical matter, [Doan] was therefore singled out for the witness to finally identify.'' In a motion *in limine*, Doan sought to prevent Mrs. O'Rourke from making an identification at trial on the grounds that an in-court identification of Doan would be ''tainted'' by the unduly suggestive pretrial identification. However, the trial court found that the prosecutor's comments to Mrs. O'Rourke were not unduly suggestive and, therefore, overruled Doan's motion to suppress.

Upon a review of the record, we find no evidence that Mrs. O'Rourke's identification of Doan at the pretrial hearing was the product of any suggestiveness resulting from the discussion the day before the hearing. The record fails to support Doan's contention that the prosecutor told Mrs. O'Rourke that the defendant would be sitting at the defense table. The evidence shows that when the witnesses asked the prosecutor if the defendant would be sitting at the defense table, the prosecutor responded, ''[N]ot necessarily, there may be another person sitting there . . . the defense may put somebody else in his chair for identification purposes.'' Thus, the prosecutor did not tell Mrs. O'Rourke where the defendant would be seated in the courtroom.

At trial, defense counsel questioned Mrs. O'Rourke about her October 16, 1990 conversation with the Commonwealth's attorney. Mrs. O'Rourke testified that the prosecutor did not tell her where the defendant would be seated at trial:

---

[4] Also, Investigator Farrell instructed Mrs. O'Rourke that ''if she sees anyone in court that she believed to be in her house, to pick him out.''

Q. Do you remember [the Commonwealth's attorney] telling you before that that [sic] there would be an individual sitting at the table?

Do you remember being told there would be an individual sitting at the table, and that's when you have to testify?

A. They don't tell me that. They say could be sit down any place, but if I recognize who be in my house just show in the Court.

Q. But they told you he'd be sitting up at this table, didn't they?

A. No, they did not.

Q. They didn't tell you that?

A. They didn't tell me.

Based on the record before us, we cannot say that the prosecutor's comments were "unduly suggestive." Because the witness' pretrial identification of Doan was not the product of an unduly suggestive procedure, her in-court identification of Doan at trial was not "tainted" and, thus, was admissible. Therefore, the trial court's denial of Doan's motion to suppress Mrs. O'Rourke's in-court identification was properly denied.

■ In addition, applying the second part of the applicable test, even if the prosecutor's comments were unduly suggestive, the trial court did not err in permitting the witness' in-court identification of Doan. Once the court has found that an out-of-court identification is unduly suggestive, "[it] must [then] look to the totality of the circumstances to determine whether there was a substantial likelihood of misidentification" so as to violate a defendant's due process rights. *Smith v. Thompson*, 1 Va. App. 407, 411, 339 S.E.2d 556, 558 (1986) (citing *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)). We have considered five factors in examining the reliability of the challenged identification: "(1) the opportunity of the witness to observe the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness' confrontation; and (5) the length of time between the crime and confrontation." *Id.* at 411-12, 339 S.E.2d at 558.

Applying these criteria, we find that Mrs. O'Rourke's pretrial identification of Doan was not so unreliable as to create a substantial likelihood of misidentification. The robbers were in the O'Rourke house for approximately forty-five minutes, giving the witness an opportunity to observe the four individuals at different times during the robbery. In fact, the witness was able to give the police a description of the four men who entered her house. Although Mrs. O'Rourke was frightened, she testified that she focused on "[trying] to look around . . . to recognize everybody . . . in there." Mrs. O'Rourke could still see Doan's eyes and hair even though he tried to cover his face with a shirt. When Mrs. O'Rourke saw Doan in the courtroom on October 17, 1990, she remembered his eyes, hair and size, and was certain that he was one of the robbers. Likewise, the length of time between the crime and the confrontation, seven months, was not excessive.

Doan nonetheless contends that Mrs. O'Rourke's inability to positively identify Doan from photographic arrays renders her pretrial identification of Doan unreliable.[5] We disagree. Mrs. O'Rourke explained to the police that she could not identify Doan in the displays because the quality of the photographs was poor. However, she told the police that if she saw him in person, she could identify him. As the trial court correctly ruled, the witness' inability to identify the accused from the photographs "was merely a factor to be presented to the jury (which it was) for its consideration." [6] *Hill*, 2 Va. App. at 698, 347 S.E.2d at 921.

For these reasons, the trial court did not err in permitting the witness to identify Doan at trial.

---

[5] Following the robbery, Mrs. O'Rourke was shown a series of photographs featuring Asian men. The first group contained thirty or forty photographs, but did not include a picture of Doan. Mrs. O'Rourke was unable to identify any of the suspects from this group of photographs. On April 21, 1990, Mrs. O'Rourke was shown six photographs. Mrs. O'Rourke identified the picture of Xuan Ho, but was unable to identify Doan. She told the police that the quality of the photographs was "lousy" and that if she saw the individuals in person, "it would be better." The police showed Mrs. O'Rourke two groups of photographs on June 6, 1990. The police first showed Mrs. O'Rourke twelve photographs, but Doan's picture was not included. Mrs. O'Rourke identified two of the suspects from this array. Mrs. O'Rourke also saw a second group of photographs. However, she was unable to identify anyone in the second stack, which included a photograph of Doan.

[6] In fact, Doan extensively cross-examined Mrs. O'Rourke at trial concerning her inability to make a positive identification of Doan from the photographic arrays. Thus, this evidence was before the jury for its consideration in assessing the weight to be given the witness' identification of Doan at trial.

## IV.

■ Doan next argues that because the evidence failed to establish a "breaking," the evidence was insufficient to support his conviction for statutory burglary. A breaking, which is an essential element of the crime of burglary, may be either actual or constructive. An actual breaking involves the application of physical force, however slight, to effectuate the entry. *Bright v. Commonwealth*, 4 Va. App. 248, 252, 356 S.E.2d 443, 445 (1987). *See also Johns v. Commonwealth*, 10 Va. App. 283, 286, 392 S.E.2d 487, 488-89 (1990). "Where entry is gained by threats, fraud or conspiracy, a constructive breaking is deemed to have occurred." *Jones v. Commonwealth*, 3 Va. App. 295, 299, 349 S.E.2d 414, 416-17 (1986).

Doan contends that because the sliding glass door in the kitchen through which the perpetrators entered was open, there was no "breaking." The Commonwealth concedes, and our review of the record discloses, that there is no evidence that physical force, threats, fraud or conspiracy were used to secure entrance to the O'Rourke residence. Absent evidence of a breaking, we reverse and dismiss Doan's conviction for statutory burglary.

## V.

The final issue before this court is whether the trial court erred in excluding a transcript of testimony given by a defense witness at an earlier hearing.

At a pretrial hearing on October 26, 1990, James Ramey testified that while he was incarcerated he spoke to Xuan Ho, who said that Doan "did not have anything to do with it." Doan contends that Ramey's testimony would have impeached the testimony of Xuan Ho by showing that Doan was not involved in the O'Rourke robbery. At trial, Doan alleged that Ramey was in the custody of the Department of Corrections and could not be located. Because Ramey could not be located for trial, Doan sought to have the transcript of Ramey's testimony entered into evidence or read to the jury. The trial court refused to admit the transcript of Ramey's testimony.

■ "Testimony given at a former trial is admissible in evidence as an exception to the hearsay rule[7] if certain requirements are met":

(1) The original witness must be unavailable. (2) The witness who is now unavailable must have been testifying under oath (or affirmation) at the former trial. (3) The issues must be substantially the same in both trials. (4) The party against whom the hearsay testimony is now offered (or his privy in interest) must have been a party in the former trial. (5) The witness who is now testifying as to what was said at the former trial must be able to do so with reasonable accuracy.

Charles E. Friend, *The Law of Evidence in Virginia* § 232 (3d ed. 1988). *See also Gray v. Graham*, 231 Va. 1, 5, 341 S.E.2d 153, 155 (1986). The sole issue in dispute is whether Ramey's incarceration at a location unknown to Doan rendered him "unavailable" to testify at trial. Accordingly, the focus of our discussion concerns the meaning of the term "unavailable" as contemplated by the prior testimony exception to the hearsay rule.

Relying on allegations in the record, we assume for purposes of this appeal that Ramey was in the custody of the Department of Corrections at the time of Doan's trial. Doan contends that Ramey's placement in the custody of the Department of Corrections at an unspecified location rendered him "unavailable." However, the Commonwealth asserts that for Ramey to be deemed "unavailable," Doan must show that reasonable diligence was exercised in searching for him. We agree.

■ Before admitting a transcript of prior testimony, the court must be satisfied " 'that a sufficient reason is shown why the original witness is not produced.' " *Gray*, 231 Va. at 5, 341 S.E.2d at 155 (quoting *Director General v. Gordon*, 134 Va. 381, 390, 114 S.E. 668, 670 (1922)). *But see Stockton v. Commonwealth*, 241 Va. 192, 204-05, 402 S.E.2d 196, 203, *cert. denied*, 112 S. Ct. 280 (1991) (demonstration of unavailability not required in every case).[8] Thus, for a witness to be

---

[7] " 'Such testimony is not open to the objections ordinarily urged against hearsay, because it has been delivered under the sanction of an oath and subject to the right of the adverse party to cross-examine the witness giving it. It is admitted on the principle that it is the best of which the case admits.' " *Burton v. Oldfield*, 195 Va. 544, 549, 79 S.E.2d 660, 664 (1954).

[8] Although the Virginia Supreme Court recognized that " ' [a] demonstration of unavailability . . . is not always required,' " *Stockton*, 241 Va. at 204-05, 402 S.E.2d at 203 (quoting *Ohio v. Roberts*, 448 U.S. 56, 65 n.7 (1980)), we find that this case does not require a deviation from the

deemed unavailable, the proponent of the evidence bears the burden of proving to the satisfaction of the court that one of the following conditions exists:

> (1) The declarant is dead. (2) The declarant is too ill to testify. (3) The declarant is insane. (4) The declarant is absent from the state *and* the party is unable to obtain the declarant's deposition. (5) The party has been unable by diligent inquiry to locate the declarant. (6) The declarant cannot be compelled to testify. (7) The opposite party has caused the declarant's absence.

Charles E. Friend, *supra*, § 231. *See also Burton*, 195 Va. at 550, 79 S.E.2d at 664. Because there is no evidence that Ramey is dead, ill, insane, absent from the state, unwilling to testify or unavailable due to action on the part of the Commonwealth, we limit our consideration to whether Doan has shown that he "has been unable by diligent inquiry to locate [Ramey]." *See Wise Terminal Co. v. McCormick*, 107 Va. 376, 380, 58 S.E. 584, 585-86 (1907) (if a witness simply cannot be located, the party must show that reasonable diligence was exercised in searching for him).

Upon review of the record, we find that Doan made no showing that reasonable diligence was exercised in searching for Ramey. Although Doan alleged that he could not locate Ramey, he did not support that allegation with any proof of what measures were taken to secure Ramey's appearance at trial. In fact, the record shows that Doan did not subpoena Ramey to testify at trial even though Doan had issued a subpoena for Ramey's testimony at the pretrial hearing just weeks

---

traditional rule that unavailability must be shown before a transcript of prior testimony is admitted. In *Stockton*, the prosecution sought to have a transcript from the guilt phase of a criminal trial read to the jury during the sentencing phase of the trial. The court permitted the transcript to be read to the jury for the limited purpose of informing the jury of the nature of the offense and the circumstances of the crime. On appeal, the Supreme Court noted that " 'the mission of the Confrontation Clause is to advance a *practical concern* for the accuracy of the truth-determining process.' " *Id.* at 205, 402 S.E.2d at 203 (quoting *Dutton v. Evans*, 400 U.S. 74, 89 (1970)). With due consideration of this purpose, the Court found no error, reasoning that in the sentencing phase of a trial, where guilt has already been determined, " 'the utility of trial confrontation [is] . . . remote.' " *Id.* (quoting *Roberts*, 448 U.S. at 65 n.7). The Court held that the utility of trial confrontation is remote if there is a " 'wholly unreal' " possibility " 'that cross-examination . . . could conceivably have shown the jury that [a prior] statement . . . might have been unreliable.' " *Id.* (quoting *Dutton*, 400 U.S. at 89). Because Doan sought to introduce the transcript of Ramey's prior testimony in the guilt phase of his trial, where there is a real possibility that cross-examination could have shown that Ramey's prior testimony was unreliable, we find the reasoning in *Stockton* inapplicable.

before trial. Simply stated, there is no indication that Doan made any efforts to ascertain Ramey's location at the time of trial.

▓▓▓ "[I]t is well settled that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial court, and, in the absence of a showing that such discretion has been abused, will not be interfered with on appeal." *Burton*, 195 Va. at 550, 79 S.E.2d at 665. Because Doan failed to show that he exercised reasonable diligence in searching for Ramey, we find no abuse of discretion in the trial court's ruling excluding the transcript of Ramey's former testimony.[9]

## VI.

In summary, we hold: (1) Doan's failure to testify at trial bars our review of his claim that the trial court erred in permitting the prosecutor to impeach his credibility with guilty verdicts obtained in a prior jury trial; (2) Doan failed to preserve for appeal his claim that portions of Xuan Ho's plea agreement are inadmissible; (3) the trial court properly denied Doan's motion to suppress the in-court identification of Doan by Mrs. O'Rourke because the in-court identification was not the product of any impermissible suggestiveness; (4) the evidence is insufficient to support Doan's conviction for burglary where the Commonwealth failed to prove that there was a breaking; and (5) the trial court did not err in excluding the transcript of testimony given by James Ramey where there was no showing that due diligence had been exercised in securing Ramey's appearance at trial. Accordingly, Doan's convictions for abduction, robbery, and use of a firearm in the commission of a felony are affirmed. We reverse and dismiss Doan's conviction for statutory burglary.

*Affirmed in part,*
*reversed in part, and dismissed in part.*

Duff, J.,* and Elder, J., concurred.

---

[9] Because we find that Doan failed to prove that he exercised reasonable diligence in securing Ramey's attendance at trial, we do not decide whether a witness' incarceration, standing alone, renders him "unavailable" within the meaning of the prior testimony exception to the hearsay rule.

* Judge Duff participated in the hearing and decision of this case prior to the effective date of his retirement on September 1, 1992 and thereafter by designation pursuant to Code § 17-116.01.