COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia


SHAMONT DAMON BURRELL
                                    MEMORANDUM OPINION[*] BY
v.          Record No. 1680-95-1     JUDGE JERE M. H. WILLIS, JR.
                                          APRIL 1, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      John E. Clarkson, Judge

          Michael Morchower (Anthony G. Spencer; Lee W.
          Kilduff; Morchower, Luxton & Whaley, on
          brief), for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.



     Shamont Damon Burrell appeals his jury convictions for

murder, malicious wounding, conspiracy and two counts of using a

firearm in the commission of a felony.  He contends:  (1) that

the trial court erred in admitting into evidence a transcript of

an unavailable witness' prior testimony, and (2) that the

evidence was insufficient to sustain his convictions.  We affirm

the convictions.

     Under familiar notions of appellate review, "we review the

evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible

therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358

S.E.2d 415, 418 (1987).

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

In the early morning hours of January 17, 1994, following a skating party, a fight erupted between two rival groups of students from Norfolk State University. Burrell was associated with one of the groups, which included students from the New York City area. Gerard Edwards was identified with the other group, which included students from the Washington, D.C. area. Burrell and Edwards fought each other during the brawl.

Later that evening, Burrell gathered with several friends in Room 228 of Scott Hall, a university dormitory. Burrell was still angry with Edwards and stated that "he wanted to get the D.C. boys." The understanding among the group was that they were going to shoot Edwards. Derrick Washington testified that he agreed to be a lookout, and Burrell was to be the "gunman." He testified that Burrell announced that he knew the combination lock to Edwards' dorm room. Burrell had lived with Edwards previously.

Washington testified that Burrell, wearing a rubber glove, punched in the combination to Edwards' door and entered the room with Tony Britton. Washington heard gunshots, and Burrell fled from Edwards' room, handing Washington the gun as he ran past.

Christopher Skinner had also agreed to act as a lookout. He testified that prior to the shooting Burrell was wearing black pants and a brown hooded sweatshirt. Ten minutes after the shooting, Skinner saw Burrell in the first floor lobby in a T-shirt and shorts. Skinner stated that he agreed to Burrell's

request that he would say that Burrell was downstairs with him during the shooting.

Ronald Richardson testified that he lived with Edwards in Room 225 of Scott Hall. Before retiring on the night of January 17, Edwards pushed a desk against the door, and placed a baseball bat beside his bed. Richardson noted that Edwards appeared fearful. Richardson was awakened during the night by a loud crash. He saw the door of the room open, and flashes coming from a gun. Shot at least six times, Edwards died from his wounds. Richardson also suffered serious injuries from gunshot wounds.

## I.

At the preliminary hearing on April 1, 1994, Donald Toatley, a student at Norfolk State University, was examined and cross-examined under oath regarding the events that occurred at the skating rink. He testified that he had seen Burrell and Edwards fighting in a brawl at the skating rink, and saw Burrell attempt to hit Edwards. He stated that he asked Burrell and the others to "let it ride," and quit fighting. Burrell responded: "F___ that, I'll kill him."

Toatley was subpoenaed by the Commonwealth, but failed to appear at trial. The subpoena had been served several months prior to trial by posting at Toatley's residence. Toatley's appearance at previous proceedings had been secured by the same method of service. On the second day of trial, the Commonwealth learned that Toatley had not appeared. The trial court issued a

capias for Toatley's arrest, and Police Investigator Glen Ford attempted to locate Toatley by telephoning and visiting his residence. Toatley's roommate told Ford that he had not seen Toatley for two days, and did not know where he worked. Ford determined that Toatley was not in custody in any neighboring jurisdiction.

Because Toatley could not be located for trial, the Commonwealth proffered into evidence his prior recorded testimony from the preliminary hearing. The trial court admitted the transcript into evidence.

First, Burrell argues that the Commonwealth failed to show a diligent and good faith effort to locate Toatley.

> Before admitting a transcript of prior testimony, the court must be satisfied "'that a sufficient reason is shown why the original witness is not produced.'"[] Thus, for a witness to be deemed unavailable, the proponent of the evidence bears the burden of proving to the satisfaction of the court that one of the following conditions exists: . . . (5) The party has been unable by diligent inquiry to locate the declarant. . . .

Doan v. Commonwealth, 15 Va. App. 87, 100-01, 422 S.E.2d 398, 405-06 (1992) (citations and footnote omitted). "'[I]t is well

settled that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial court, and, in the absence of a showing that such discretion has been abused, will not be interfered with on appeal.'" Doan, 15 Va. App. at 102, 422 S.E.2d at 406 (quoting Burton v. Oldfield, 195 Va. 544, 550, 79 S.E.2d 660, 665 (1954)).

Upon reviewing the record, we conclude that the evidence does not support the trial court's finding that the Commonwealth exercised due diligence to secure Toatley's appearance. Cf. Doan, 15 Va. App. at 101-02, 422 S.E.2d at 406 (holding that reasonable diligence not demonstrated where witness not subpoenaed and no evidence shown of other measures to secure his appearance). The Commonwealth did not confirm that Toatley actually received the subpoena. It had no contact with him from the issuance of the subpoena to the time of trial, and thus developed no continuing assurance of his appearance. It did not check for his appearance before the commencement of the trial. Its frantic efforts to locate him upon discovering his non-appearance were insufficient to compensate for a lack of appropriate pretrial precaution.

While we hold that the trial court erred in ruling that the Commonwealth had exercised due diligence to procure Toatley's appearance, we find that error to be harmless. The events described by Toatley bore only tangentially on the circumstances surrounding the murder. Furthermore, Toatley's testimony was

only cumulative.

Second, Burrell contends that he was denied an adequate opportunity to cross-examine Toatley at the preliminary hearing. He argues that he was unable to question Toatley regarding the circumstances under which Toatley identified Burrell as having threatened to kill Edwards. Burrell also asserts that because the preliminary hearing was held prior to his indictment for conspiracy to murder Edwards, he was unable to fully cross-examine Toatley regarding the statements and actions of others who may have conspired to kill Edwards.

> An accused's right to confrontation is satisfied with respect to the admission of prior testimony when the prior testimony was given under oath in an adversary proceeding, such as a preliminary hearing, at which the accused had an adequate opportunity to cross-examine the witness on the issues which later develop at trial.

Jones v. Commonwealth, 22 Va. App. 46, 52, 467 S.E.2d 841, 844 (1996) (citing Fisher v. Commonwealth, 217 Va. 808, 813, 232 S.E.2d 798, 801-02 (1977); Lassiter v. Commonwealth, 16 Va. App. 605, 614, 431 S.E.2d 900, 905 (1993)).

Burrell's counsel availed himself of the opportunity to cross-examine Toatley at the preliminary hearing. While counsel declined to explore whether the photographic identification by Toatley of Burrell was unduly suggestive, he was not denied adequate opportunity to do so. The subsequent indictment for conspiracy did not render Burrell's prior opportunity to confront

- 6 -

Toatley at the preliminary hearing inadequate.  The issues at the preliminary hearing, and at trial, about which Toatley could testify, concerned the events witnessed at the skating rink.  The skating rink brawl occurred prior to the formation of the conspiracy, prior to the murder of Edwards, and prior to the malicious wounding of Richardson.  Because the issues at the preliminary hearing were the same or similar to the issues which later developed at trial, the addition of the conspiracy charge was of no consequence in guaranteeing Burrell an adequate opportunity to cross-examine Toatley.

## II.

Burrell contends next that the evidence was insufficient to sustain his convictions because Christopher Skinner and Derrick Washington benefitted from their testimony and gave conflicting accounts of what transpired.  We disagree.

> When the law says that it is for the triers of fact to judge the credibility of a witness, the issue is not a matter of degree.  So long as a witness deposes as to facts which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony.  If the trier of fact sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) (citation omitted).

The jury accepted the Commonwealth's evidence, and rejected

Burrell's testimony that he was not involved in the shooting of Edwards and Richardson.  Our review of the record reveals sufficient credible evidence to sustain Burrell's convictions. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>