UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:     Judges AtLee, Lorish and Frucci
Argued by videoconference


KARDARA ANTONIO MILES

                                                      MEMORANDUM OPINION* BY
v.          Record No. 0391-24-1                      JUDGE STEVEN C. FRUCCI
                                                      SEPTEMBER 23, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Kardara Antonio Miles ("Miles") was convicted of robbery, first-

degree murder, and two counts of using a firearm to commit a felony. He argues that the circuit

court erred in admitting into evidence a witness's out-of-court identification and testimony from

his probation officer. Miles also asserts that the evidence was insufficient to identify him as one

of the victim's assailants. For the following reasons, we affirm the circuit court's judgment.


---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On November 25, 2016, Officer Garber of the Newport News Police Department responded to a reported shooting outside of an apartment building. While investigating the scene, Officer Garber saw Tommy Strayhorn ("Strayhorn") lying facedown across the open doorway of the building with his legs extended out past the door and the remainder of his body on the interior hallway that separated the first-floor apartments. Strayhorn suffered gunshot wounds to the right side of his head below his ear and his right ankle. When Officer Garber saw him, Strayhorn was not breathing but had a faint pulse. Officer Garber applied pressure to Strayhorn's wound until medics arrived and transported Strayhorn to the hospital. Strayhorn stayed in a coma for about two-and-a-half days prior to succumbing to his wounds.

Several people were at the scene when officers responded to the shooting, including Felton Berrian ("Berrian"). Officer Garber asked Berrian if he saw what happened, and Berrian responded that he saw what happened but did not know the person who did it. The police officers then collected forensic evidence from the shooting scene, including six cartridge cases, bullet fragments, and a black phone later determined to belong to James Miles ("James"), Miles's brother. Analysis of the bullet fragments and cartridges showed that at least three firearms had been used in the shooting.

Before the shooting, Newport News and Hampton police had published a "wanted" poster with the names and pictures of 36 people with outstanding warrants; Miles was on that poster. About two weeks after the shooting, Berrian met with officers. The officers had already

---

[1] "[W]e recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

identified two potential suspects and prepared photo lineups to show Berrian, but prior to showing him any photos, Berrian told them that the names of the "shooters" were "K.D. and James." Berrian then informed the officers that "some people" had told him that K.D. was on the wanted poster and that he had confirmed seeing K.D. on it. Berrian described K.D.'s appearance to the officers. At that point in the interview, an officer located James's information, but could not find "K.D." Berrian told the officers to produce the wanted poster and that he saw James and "K.D." shoot Strayhorn. Berrian then stated he thought "K.D.'s" name was either Kardara or Kaneil. Officers presented the wanted poster, Berrian pointed to the photo of Miles and said "[t]hat's him," and Berrian then wrote on the margin near Miles's photograph "K.D. shot P" and explained that "P" was Strayhorn's nickname.[2] Later, another witness of the shooting, Tarique Lomax ("Lomax"), provided a statement to the officers, in which he identified Miles, James, and Marquis Pittman ("Pittman") as the perpetrators.

Before trial, Miles moved to bar his former probation officer, Casandra Novinger ("Novinger"), from testifying. He argued that Novinger's testimony would alert the jury to his status as a convicted felon, which would prejudice him at trial. At the motion to exclude hearing, Novinger testified that she had served as Miles's probation officer from November 2015 to November 2016. In 2015, Miles provided Novinger with a phone number ending in 2461. During his supervision, Novinger communicated with Miles in text messages and calls using that number. Cell phone tower analysis showed that in the hours leading up to the murder, Pittman had called the 2461 number repeatedly; the last call occurred about an hour before the shooting. Shortly after, the 2461 phone moved into the same area of Newport News as Pittman's. About 20 minutes before the shooting, both cell phones connected to towers less than a mile from Strayhorn's home. After the

---

[2] Berrian then also identified Marquis Pittman—another suspected participant in the robbery—from a separate photo lineup.

shooting, both phones left the area. In total, there were 9 contacts between the phones the day of the shooting, and 43 more contacts the next day. Two days after the murder, the owner of the 2461 phone cancelled the account entirely. After hearing evidence, the circuit court denied Miles's motion, finding that Novinger's testimony linking Miles to the phone number was more probative than prejudicial.

Miles also moved to exclude Berrian's identification before trial, arguing that the "procedure was unconstitutionally suggestive." The circuit court denied the motion. During the jury trial, Berrian identified Miles and James as Strayhorn's shooters and Pittman as the getaway driver.

The Commonwealth also presented a cell phone analysis to the jury. During direct examination, Novinger testified that Miles used the 2461 phone number while he was under her supervision; she provided no other information, including the reason he was on probation. While cross-examining Novinger, Miles asked questions about the reason for her last contact with Miles— a drug screen—and confirmed that he absconded from his last meeting. Miles then introduced into evidence the wanted poster Berrian had used to identify him, which stated that Miles had an outstanding warrant for breaking and entering, as well as grand larceny.

After the Commonwealth rested, Miles moved to strike, but only asserted "sufficiency of the evidence" with no further argument or explanation about why the evidence was insufficient. The circuit court denied the motion. The jury convicted Miles of first-degree murder, robbery, and both counts of using a firearm to commit those crimes. The circuit court sentenced him to 88 years of incarceration, with 40 years suspended. Miles appeals.

ANALYSIS

I. Interview Identification

Miles contends the circuit court erred in denying his motion to suppress Berrian's out-of-court identification, arguing that it resulted from "unduly suggestive" police conduct. He further argues that, since the out-of-court-identification should have been suppressed, Berrian's "in-court identification should have been suppressed." "When reviewing the denial of a motion to suppress, 'we view the evidence in the light most favorable to the Commonwealth.'" *Ray v. Commonwealth*, 74 Va. App. 291, 302 (2022) (quoting *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019)). "Our review includes 'evidence adduced at both the trial and the suppression hearing.'" *Id.* (quoting *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019)). "We give deference to the trial court's factual findings and review *de novo* the application of law to those facts." *Id.* (quoting *Joyce v. Commonwealth*, 72 Va. App. 9, 14 (2020)). Miles "has the burden to show that the denial of his motion to suppress was reversible error." *Id.* (citing *Commonwealth v. Robertson*, 275 Va. 559, 564 (2008)).

"The due process clause applies as a check on eyewitness identifications where 'the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime.'" *Id.* at 305 (quoting *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012)). "But the 'word "identification" need not set off the constitutional fire bell.'" *Id.* (quoting *State v. Greene*, 201 A.3d 43, 45 (Md. Ct. Spec. App. 2019), *aff'd*, 229 A.3d 183 (Md. 2020)). Whether an out-of-court identification violated the defendant's due process rights is determined by a two-step test. *Id.* "First, the court must determine 'whether the identification was unduly suggestive.'" *Sanchez v. Commonwealth*, 41 Va. App. 340, 354 (2003) (quoting *Doan v. Commonwealth*, 15 Va. App. 87, 95 (1992)). "If the court resolves that question in the affirmative, the court 'next must determine whether the out-of-court identification was

nevertheless so reliable that no substantial likelihood of misidentification existed.'" *Id.* (quoting *Doan*, 15 Va. App. at 95).

Contrary to Miles's argument, the record establishes that the police did not, in fact, suggest to Berrian that Miles was one of the assailants. Berrian had arrived at the interview having already identified Miles as the assailant based on publicly available photographs and personal knowledge about "K.D." When officers could not locate K.D.'s information, Berrian told officers where to find a photograph to use to identify him. As such, it cannot be said that the out-of-court-identification was unduly suggestive. Therefore, the circuit court did not err in not suppressing the out-of-court identification. "Because we conclude that the [circuit] court did not err in admitting the out-of-court identification, we also conclude that the admission of the in-court identifications was not error." *Ray*, 74 Va. App. at 305.

II. Probation Officer Testimony

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). Likewise, a circuit court has discretion in weighing the probative value of evidence versus its prejudicial effect. *See Kenner v. Commonwealth*, 299 Va. 414, 424 (2021). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) (alteration in original).

"All relevant evidence is admissible" unless another evidentiary principle requires its exclusion. Va. R. Evid. 2:402(a). Exclusion is warranted if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i). "All evidence tending to prove guilt is prejudicial to an accused, but the mere fact that such evidence

is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible." *Powell v. Commonwealth*, 267 Va. 107, 141 (2004). A circuit court "must determine whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Lee v. Spoden*, 290 Va. 235, 252 (2015). To be considered "unfairly prejudicial," evidence must "inflame the passions of the trier of fact, or . . . invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.*

Here, Miles argues that the circuit court erred in allowing Novinger's testimony, claiming that her testimony's probative value "was outweighed by the danger of unfair prejudice." As an initial note, Miles concedes on brief that the phone number evidence obtained from Novinger's testimony was probative. The record supports that concession; Miles had identified that phone number as one he used to communicate with his probation officer during his supervision, which ended approximately three months before Strayhorn's murder. Analysis of that number's data showed communication with another assailant and tracked both phone numbers as they entered the area of the crime scene at the time of the shooting.

Despite its probative value, Miles asserts the testimony was prejudicial because it "led to additional testimony" about probation, drug screens, absconding from supervision, and allegations of an outstanding warrant. However, *Miles* elicited that testimony. The Commonwealth's direct examination was limited to how Miles communicated with Novinger—it presented no evidence about Miles's criminal history or his compliance with probation. "When 'an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and [the appellate court] cannot reverse for the alleged error.'" *Stevens v. Commonwealth*, 72 Va. App. 546, 557 (2020) (alteration in original) (quoting *Hubbard v. Commonwealth*, 243 Va. 1, 9

(1992)). As Miles cannot now assert that he was prejudiced by testimony he elicited, we affirm the circuit court's ruling.

### III. Sufficiency of the Evidence

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The objection "must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.*

On appeal, Miles asserts that the trial evidence failed to identify him as one of the assailants. At trial, although Miles moved to strike, he only asserted "sufficiency of the evidence" and failed to argue any specific basis—including issues regarding identity. He therefore failed to preserve his identification argument for appeal. Acknowledging this conclusion, Miles asks this Court to consider his argument under the ends of justice exception to Rule 5A:18.

"'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220-21 (1997)). Whether to apply the ends of justice exception involves two questions: "(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66

Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (alteration in original) (quoting *Redman*, 25 Va. App. at 221). Furthermore, to invoke the "exception when sufficiency of the evidence has been raised for the first time on appeal, an appellant must do more than show that the Commonwealth *failed* to prove an element or elements of the offense." *Id.* In order "to show that a miscarriage of justice *has* occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 74 (2015) (quoting *Redman*, 25 Va. App. at 221-22).[3]

Miles argues only that the ends of justice exception applies because the two witnesses at trial that identified Miles as an assailant were not credible. "[L]ack of proof is not affirmative evidence to the contrary, which would warrant exercising the 'ends of justice' exception to Rule 5A:18." *Id.* at 75-76. Miles's argument fails to assert that the conduct for which he was convicted is not a criminal offense or that the record affirmatively establishes that an element of the offense did not occur. Accordingly, this Court declines to consider Miles's claim under the ends of justice exception recognized by Rule 5A:18 and finds that his argument on appeal that the evidence was insufficient to support his convictions is procedurally barred.

CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[3] "Arguing that the record is devoid of evidence of an element does not equate with affirmative proof that an element did not occur." *Quyen Vinh Phan Lee*, 65 Va. App. at 75 (footnote omitted).