COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and White
Argued by videoconference


SEAN JAMES HORAN

                                        MEMORANDUM OPINION* BY
v.       Record No. 1186-21-1            JUDGE GLEN A. HUFF
                                        DECEMBER 6, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted appellant of assault and battery of a law enforcement officer, in

violation of Code § 18.2-57(C), attempting to disarm a law enforcement officer, in violation of

Code §§ 18.2-57.02 and 18.2-26, trespassing, in violation of Code § 18.2-119, disorderly conduct,

in violation of Code § 18.2-415, attempting to prevent his arrest, in violation of Code § 18.2-460(E),

and public intoxication, in violation of Virginia Beach local ordinance 23-22.[1]  He challenges the

sufficiency of the evidence supporting his convictions.[2]  Appellant also contends that the trial court

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court acquitted appellant of assault, failure to provide identification to law enforcement, and obstruction of justice.

[2] Although appellant originally included a sufficiency of the evidence challenge to his public intoxication conviction, he has withdrawn that assignment of error in his opening brief. Accordingly, this Court need not address that assignment of error.  *See, e.g.*, *Marsh v. Commonwealth*, No. 1568-13-2, 2015 WL 1013381 (Va. Ct. App. Mar. 10, 2015) (deciding that we need not address withdrawn arguments); *Mayo v. Commonwealth*, No. 2385-11-4, 2013 WL 599778 (Va. Ct. App. Feb. 19, 2013) (same).

erred by convicting him of disorderly conduct because the trial court based its verdict on "the same conduct used to convict [him] for public intoxication and attempting to prevent a law enforcement officer from arresting [him]." For the reasons below, this Court reverses appellant's conviction for attempting to prevent his arrest and affirms the remainder of his challenged convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). On the afternoon of May 14, 2019, appellant stopped at a Virginia Beach Buffalo Wild Wings restaurant after leaving his job at a local brewery. Appellant ordered a meal and a beer, and Leandra Nobles, the bartender, was appellant's server. According to appellant, Nobles was "dismissive" when he asked her to change the channels on the bar television, and "a conflict" arose between them.[3] Appellant conceded that he was intoxicated when he arrived at the restaurant.

The restaurant manager, Michael Fortuna, testified that Nobles entered his office and told him that appellant was asleep at the bar and had refused her request to leave. Fortuna left his office, walked behind the bar, and asked appellant to leave. When Fortuna asked appellant for his credit card to close out his check, appellant retorted, "Well, do you even know how to use a credit card?" Fortuna swiped appellant's credit card and asked him again to leave. Appellant replied, "[O]kay. I'm not leaving." But when Fortuna walked past appellant toward his office, appellant implored, "[P]lease, please don't call the cops. I'll go ahead and leave." Fortuna told appellant, "[W]ell, sir, if you don't leave, I have to call the cops."

---

[3] Nobles testified at trial. The trial court specifically found that her testimony was not credible.

When appellant remained in the restaurant, Fortuna entered his office and called the nonemergency number for police dispatch. As Fortuna spoke with dispatch, Nobles appeared in Fortuna's office with appellant's wallet. Fortuna returned to the restaurant where he discovered some of the guests attempting to "keep [appellant] away" from Nobles, and "an altercation" between appellant and the other diners. Appellant was walking around the bar "antagonizing" Nobles by "saying stuff" to her. Fortuna attempted to "block" appellant between two tables to keep him away from the other patrons and Nobles. When appellant approached Nobles, three of the restaurant guests pushed him back. Fortuna called 911 and reported that "the situation had gotten physical." The dispatcher assured Fortuna that officers were en route. As Fortuna spoke with the dispatcher, three patrons "carried" appellant out of the restaurant.

One of those patrons, Dylan Edwards, testified that he intervened because appellant was "[b]eing loud[] running around the restaurant" and swearing at the bartender. Edwards stated that appellant "chucked" his sunglasses at the bartender's face as he stood two feet away from her. Edwards pushed appellant toward the end of the bar and said, "[L]et's go, let's go." Edwards was unsuccessful in escorting appellant to the exit, and appellant began to swear at the bartender, calling her the "N-word" and "a bitch." Edwards asked appellant to stop, but another patron pushed appellant to the ground. When appellant stood and attempted to "get past" Edwards, he stated, "I'm getting my wallet back from that bitch." Edwards grabbed him by the neck and dragged him out of the restaurant. Once they reached the sidewalk outside the restaurant entrance, Edwards blocked appellant so that he could not re-enter, and "a little scuffle" ensued. When Officers Simmons and Webb arrived, Edwards assisted them in handcuffing appellant. Edwards also assisted the officers as they escorted appellant to a patrol car. When they reached the car, appellant "kicked off of [it] and everybody fell in the street," narrowly avoiding a passing vehicle.

Simmons testified that he was the first officer to arrive at the restaurant in response to a report of "[a] disorderly subject." Footage from Simmon's body camera was admitted at trial. As Simmons approached the sidewalk outside the restaurant entrance, three men were standing around appellant. Webb arrived almost immediately after Simmons. Simmons noticed that appellant smelled of alcohol and his speech was "very slurred."

As Simmons drew closer to appellant, Simmons asked, "What's the deal, man?" In the footage, someone in the gathering referred to a "camera," at which point appellant turned his back to Simmons. Simmons, who was standing immediately behind appellant, reached out and grabbed appellant by his backpack, stating, "No, no, you go over here." Simmons kept his hands on appellant as he turned appellant around and moved him toward the railing along the sidewalk. Without announcing that appellant was under arrest, Simmons and Webb grabbed appellant by the arms and attempted to handcuff him. At trial, Simmons and Webb testified that they were handcuffing appellant for "[p]ublic intoxication."

Appellant struggled with the officers, "jerking his body around, pulling his arms to the front" and moving forward "to get away" from the officers, but the officers kept their hands on him. After struggling with appellant, the officers "decided to take him to the ground." As they did, appellant's face struck a windowsill. The officers handcuffed appellant, assisted him to his feet, and with their hands on appellant, they escorted him to a patrol car across the street. Both officers placed their hands on appellant because he was "very unsteady on his feet" and "kind of floppy." Simmons held appellant against the patrol car while Webb searched him.

Simmons felt a "tug" on his service firearm and saw appellant's left hand pulling on the butt of his gun. Appellant was unable to remove the gun because it was secured in the holster. Simmons twisted his body away from appellant, alerted Webb, and the two officers placed appellant on the ground again. Webb testified that she saw appellant's hand "[p]ulling up" on

the grip of Simmons's weapon. Webb and Simmons kept appellant on the ground, and when backup assistance arrived, they attempted to place appellant in the back of the patrol car. Appellant "lock[ed] his legs" and continued to resist, prompting the backup officer to pull him into the car feet first.

Appellant's head was bleeding, but he refused medical assistance. Webb transported him to jail, and upon their arrival, appellant refused to exit the patrol car. With assistance from deputies, Webb escorted appellant into the jail and placed him on a bench. As Webb bent down to handcuff appellant to the bench, he repeatedly "g[ot] in [her] face" and called her "a dog killing bitch." When Webb placed her hand on appellant's shoulder to push him away from her face, he licked her forearm, depositing blood on it from his face. Webb testified that appellant was laughing and swearing at her during the incident.

Appellant testified on his own behalf. He stated that he went to the restaurant after work to watch sports on television and to eat dinner and that Nobles became "very annoyed" when he asked her to change the television channel. After that, appellant maintained that her service became "worse and worse." When Nobles asked him to "cash out" and leave before he had finished his meal, he asked for her manager. Appellant stated that he paid the manager at the bar and, even though the manager and Nobles asked him to leave, he remained there because he wanted to discuss the poor service he had received. After the manager threatened to call the police and returned to his office, Nobles took his wallet. Appellant agreed that "a conflict" arose between him and Nobles after that and that none of the other patrons believed that she had taken his wallet. Appellant denied calling Nobles a "bitch" or "the N-word," but he agreed that a customer "grabbed [him] around the neck" and dragged him out of the restaurant. He stated that, when the police arrived, they "grabbed" him immediately and were "extremely hostile." Appellant admitted that he "struggled" with the officers and called Simmons a "f-ing midget"

and Webb a "dog killing bitch"; however, he denied attempting to disarm Simmons or licking Webb's arm.

At the conclusion of the evidence, the trial court convicted appellant of assault and battery of a law enforcement officer, attempting to disarm a law enforcement officer, attempting to prevent his arrest, disorderly conduct, trespass, and public intoxication. The trial court acquitted him of assault, failure to provide identification to law enforcement, and obstruction of justice. This appeal followed.

## ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). This Court must affirm if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### 1. Assault and Battery of a Law Enforcement Officer

Appellant contends that the evidence failed to prove that he committed a "battery" on Webb because he did not have the requisite intent. Appellant stresses that he had suffered head trauma before the incident with Webb and that he "felt out of it" and "did not comprehend what was going on," and therefore could not have formed the specific intent to harm the officer.

To convict a person of assault and battery, the Commonwealth must prove the person's "intention to do bodily harm—either an actual intention or an intention imputed by law." *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000) (quoting *Davis v. Commonwealth*, 150 Va. 611, 617 (1928)). Where a person touches another "in a rude, insolent, or angry manner," a factfinder may "impute" the "unlawful intent." *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (first quoting *Adams*, 33 Va. App. at 469; and then quoting *Parish v. Commonwealth*, 56 Va. App. 324, 331 (2010)).

Viewed as a whole, the circumstances were sufficient to support a reasonable conclusion that appellant willfully touched Webb in a "rude" or "insolent" manner. *Id.*; *see also Gilbert v. Commonwealth*, 45 Va. App. 67, 71-72 (2005) (evidence sufficient to prove requisite intent for assault and battery when defendant was noncompliant with police and cursed, threatened, and spat at police officer). Appellant was combative and uncooperative with Webb and Simmons when they took him into custody and remained so after Webb drove him to jail. By his own admission, appellant was intoxicated and swearing at Webb when he arrived at the jail. Webb testified that appellant repeatedly "g[ot] in [her] face" as she attempted to handcuff him to a bench and, when she pushed him away from her face, he licked and bloodied her forearm. And Webb testified that appellant's touching was unwanted. Although appellant denied that he licked Webb, the trial court was permitted to reject his self-serving testimony and conclude that he was lying to conceal his guilt. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). A factfinder could therefore properly impute unlawful intent based on his actions. Accordingly, the evidence was sufficient to support appellant's conviction for the assault and battery of a law enforcement officer.

## 2. Attempt to Disarm a Law Enforcement Officer

Appellant next argues that he did not "knowingly" attempt to remove or deprive Simmons of the use of his firearm, as required by Code §§ 18.2-57.02 and 18.2-26. Instead, citing his testimony at trial, he contends that he accidentally touched the gun when "he was feeling around for balance" because he was "unsteady on his feet," "dazed," and "confused" after he hit his head in front of Buffalo Wild Wings.

"An attempt to commit a crime is composed of two elements: (1) [t]he intent to commit it; and (2) a direct, ineffectual act done towards its commission." *Pulley v. Commonwealth*, 74 Va. App. 104, 124 (2021) (alteration in original) (quoting *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020)). "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." *Id.* (quoting *Fletcher*, 72 Va. App. at 506). "Intent is a factual determination, and a trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011). "Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the only method of proof." *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). Moreover, "[t]he finder of fact may infer that a 'person intends the natural and probable consequences of his or her acts.'" *Johnson v. Commonwealth*, 53 Va. App. 79, 100 (2008) (quoting *Velasquez v. Commonwealth*, 276 Va. 326, 330 (2008)).

Here, appellant repeatedly resisted the officers' attempts to handcuff him and place him in the police cruiser. He struggled with the officers, swore at them, and had to be forced to the ground outside the restaurant as well as outside the patrol car. Simmons and Webb testified that appellant was "tugging" and "pulling" at the grip of Simmons's service weapon as the officers

- 8 -

attempted to place him in the patrol car. That testimony was sufficient to prove appellant knowingly and intentionally attempted to remove Simmons's weapon.

### 3. Trespass

Appellant asserts that the evidence was insufficient to support his trespass conviction under Code § 18.2-119 because he "had no intent to trespass due to his good faith belief that he could be on the property to retrieve his wallet." He maintains that, "[a]lthough not listed in the statute, criminal intent is an element of trespassing." Citing *Reed v. Commonwealth*, 6 Va. App. 65 (1988), appellant contends that a defendant does not trespass when he is "on the premises or land under a bona fide claim of right."

Code § 18.2-119 states in pertinent part:

> If any person without authority of law goes upon or remains upon
> the . . . buildings or premises of another . . . after having been
> forbidden to do so, either orally or in writing, by the owner, lessee,
> custodian, or the agent of any such person, . . . he shall be guilty of
> a Class 1 misdemeanor.

Although not expressly stated, Code § 18.2-119 "has been uniformly construed to require a *willful* trespass." *Reed*, 6 Va. App. at 70 (emphasis added); *see also Commonwealth v. Hicks*, 267 Va. 573, 583 (2004) ("Code § 18.2-119 . . . has an intent requirement [and] the Commonwealth [i]s required to prove that [the defendant] committed an act of intentional trespass."). Thus, a person is not guilty of criminal trespass when he shows he remained on the property "under a bona fide claim of right"—that is, "a sincere, although perhaps mistaken, good faith belief that [he] has some legal right to be on the property." *Reed*, 6 Va. App. at 71.

But a "claim of right is an affirmative defense." *Id.* at 70. A defendant relying on an affirmative defense has the burden "to present evidence establishing such defense to the satisfaction of the fact finder." *Riley v. Commonwealth*, 277 Va. 467, 479 (2009). Here, appellant cites only his belief that he was entitled to remain in the restaurant after Nobles

removed his wallet.  Appellant's argument, however, ignores the undisputed evidence that he remained at the restaurant *before* the dispute with Nobles over his wallet.  The record demonstrates that appellant refused to leave after both Nobles and Fortuna directed him to leave and he had paid his bill, even after Fortuna announced that he was calling the police.  Appellant cites no evidence that either Fortuna or Nobles had agreed for him to remain on the premises.  Based on appellant's "conflict" with Nobles, the trial court could reasonably find that appellant remained in the restaurant because he was upset with Nobles, not because he believed he had a *bona fide* right to be there.  The evidence thus supports his conviction for criminal trespass.

### 4.  Disorderly Conduct—Code § 18.2-415

Appellant also claims the trial court erred by convicting him of disorderly conduct in violation of Code § 18.2-415 because "the conduct that the court considered disorderly was the same conduct used to convict [him] for public intoxication and attempting to prevent a law enforcement officer from arresting [him]."  He cites *Battle v. Commonwealth*, 50 Va. App. 135 (2007), to argue that the "other crimes" provision in Code § 18.2-415(B) prohibited the Commonwealth from prosecuting him for disorderly conduct and for public intoxication and attempted flight from a law enforcement officer in violation of Code § 18.2-490(E).

Code § 18.2-415 states in pertinent part:

> A.  A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he:
>
> 1.  . . . while in a public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed[.]
>
>      . . . .
>
> B.  The conduct prohibited under subsection A shall not be deemed to include the utterance or display of any words or to include conduct otherwise made punishable under this title.

In *Battle*, this Court reversed the defendant's conviction of disorderly conduct "because the statute specifically excludes 'conduct otherwise made punishable' by other Title 18.2 criminal statutes." 50 Va. App. at 137 (quoting Code § 18.2-415). The Court clarified, however, that the proviso "does not say a disorderly conduct charge must be dismissed anytime a defendant could be prosecuted under both the disorderly conduct statute and another provision of Title 18.2." *Id.* at 140. "[T]he conduct exempted from the reach of Code § 18.2-415 includes only Title 18.2 crimes for which the defendant could be found guilty beyond a reasonable doubt." *Id.* Further, the "other-crimes" proviso precludes a conviction under Code § 18.2-415 only when the "convictable disorderly conduct [i]s comprised *solely* of conduct 'otherwise made punishable under this title.'" *Id.* at 141 (quoting Code § 18.2-415). Thus, the exception applies only if a factfinder could find the defendant guilty beyond a reasonable doubt of another crime based "solely" on the conduct supporting his disorderly conduct conviction. *Id.*

Appellant's conviction does not fall within that exception. His argument first assumes that the evidence was sufficient to support his convictions for those two offenses. But, as explained later, this Court concludes the evidence did not support convicting appellant of attempting to prevent his arrest. Because "the conduct exempted from . . . Code § 18.2-415 includes only Title 18.2 crimes for which the defendant could be *found guilty* beyond a reasonable doubt," the conduct related to the charge of attempted flight is irrelevant to this analysis. *Id.* at 140 (emphasis added).

Second, his argument also assumes that his disorderly conduct conviction was based "solely" on the conduct also supporting convictions for public intoxication and attempted flight from a law enforcement officer. Yet the "convictable disorderly conduct" supporting appellant's conviction under Code § 18.2-415 is not "comprised *solely* of conduct 'otherwise made punishable'" under the public intoxication ordinance or Code § 18.2-460(E). *Id.* at 141. To

prove disorderly conduct, the Commonwealth was not required to prove that appellant was intoxicated or that he attempted to flee from a law enforcement officer. Instead, the Commonwealth was required to prove that appellant intended "to cause public inconvenience, annoyance, or alarm, or recklessly create[ed] a risk thereof," and "while in a public place engage[d] in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed." Code § 18.2-415. This conduct is not the same conduct proscribed by an ordinance prohibiting public intoxication or a statute prohibiting flight from a law enforcement officer.[4] Accordingly, as the conduct supporting appellant's disorderly conduct conviction was not based "solely" on the conduct supporting his public intoxication and attempted flight from a law enforcement officer convictions, appellant's argument that the exemption in Code § 18.2-415(B) prohibited his disorderly conduct conviction is unpersuasive.[5]

### 5. Attempt to Prevent Arrest by Flight

Appellant next asserts that the evidence failed to prove he attempted to prevent a law enforcement officer from arresting him in violation of Code § 18.2-460(E) because it did not prove that he fled. He correctly argues that a violation of the statute requires proof of "running

---

[4] *See, e.g.*, *Tokora-Mansary v. Commonwealth*, No. 2494-08-4, slip op. at 9, 2009 WL 5083540, at *5 (Va. Ct. App. Dec. 29, 2009) ("[D]isorderly conduct was not 'comprised *solely* of conduct "otherwise made punishable"' under Title 18.2."); *Cary v. Commonwealth*, No. 2068-14-1, 2015 WL 6143660 (Va. Ct. App. Oct. 20, 2015) (finding disorderly conduct conviction not based on same conduct as obstruction of justice conviction). "Unpublished opinions . . . have no precedential value." *Brandau v. Brandau*, 52 Va. App. 632, 639 n.2 (2008). Nevertheless, the citation of an unpublished opinion "is permitted as informative." Rule 5A:1(f).

[5] Given the narrow scope of appellant's argument, we need not address whether he could have been convicted of another offense in Title 18.2, other than public intoxication and attempted flight from a law enforcement officer, based solely on the evidence supporting his disorderly conduct conviction. *See Battle*, 50 Va. App. at 141-42 (holding that all of the conduct supporting the defendant's conviction under Code § 18.2-415 was encompassed by other offenses in Title 18.2, including assault, fighting words, and obstructing "free passage," and therefore, he could not be convicted of disorderly conduct).

away or movement away from the officer's immediate span of control." He invokes *Joseph v. Commonwealth*, 64 Va. App. 332 (2015), in which "this Court reversed a conviction under the predecessor of Code § 18.2-460(E)—i.e., Code § 18.2-479.1." *Peters v. Commonwealth*, 72 Va. App. 378, 387 (2020).[6]

Code § 18.2-460(E) states:

> Any person who intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant, is guilty of a Class 1 misdemeanor. For purposes of this subsection, intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest and (a) the officer has the legal authority and the immediate physical ability to place the person under arrest, and (b) a reasonable person who receives such communication knows or should know that he is not free to leave.

In *Joseph*, the defendant "refused to comply with an officer's commands to place his hands behind his back, 'repel[led] the officer's efforts to secure the handcuffs on him,' and 'backed up onto the officer,' but 'did not leave the scene and remained continuously in . . . close proximity' to the officer." *Peters*, 72 Va. App. at 387-88 (alterations in original) (quoting *Joseph*, 64 Va. App. at 340). The Court held that "the fact that the appellant was clearly 'resisting' the officer's efforts to lawfully arrest him [was not] dispositive because the clear language in [the statute] requires that the offender be 'fleeing' from the officer as an element of the crime." *Joseph*, 64 Va. App. at 340. Accordingly, "'fleeing from a law-enforcement officer' requires evidence of running away or physical movement beyond the scope of the officer's immediate span of control." *Id.* at 341. Because the evidence failed to prove that the defendant was "beyond" the officer's "immediate span of control," the Court reversed his conviction. *Id.*;

---

[6] Code § 18.2-479.1 was repealed in 2018. *Peters*, 72 Va. App. at 387 n.6. "The case law that interpreted and applied Code § 18.2-479.1 applies in interpreting and applying Code § 18.2-460(E)." *Id.*

*see also Peters*, 72 Va. App. at 388 ("[T]he trial court erred by holding simply that Peters's refusal to place his hands behind his back was sufficient for a conviction under Code § 18.2-460(E).").

On appeal, the Commonwealth argues that appellant "fled" when he "broke away" from the officers, as well as when he "walk[ed] past Officer Simmons such that the officer had to reach out and grab [appellant]'s backpack to stop him." Nevertheless, the Commonwealth concedes that the "officers . . . held onto [appellant]'s clothing." At trial, Simmons was asked about the specific instances when appellant attempted to flee. Simmons answered that appellant attempted to flee "multiple times." He emphasized that appellant "buck[ed] . . . trying to get away from us" as the officers walked him to the patrol car, but they "ha[d] him hooked under his arms so he couldn't get away." Simmons also stressed that appellant was "tugging on my firearm" when they reached the car. When asked if appellant ever "broke away" from the officers, Simmons replied that he did so "multiple times in the beginning of the video. You see him break his hands away from to where [sic] we have to take him to the ground."

In Simmons's body camera footage, neither he nor Webb announced to appellant that he was under arrest as they approached him; instead, as Simmons drew closer to appellant, he asked, "What's the deal, man?" After an unidentified voice referred to a "camera," appellant turned his back to Simmons, but remained within arm's reach of Simmons, enabling the officer to grab appellant's backpack and redirect him, stating, "No, no, you go over here." Simmons's hands remained on appellant as he moved appellant toward the railing along the sidewalk. Further, although the video reflects that appellant struggled with the officers as they attempted to handcuff him, Simmons testified that the officers took appellant "to the ground" when he pulled his hands away, demonstrating that he "remained continuously in . . . close proximity" to the officers. *Joseph*, 64 Va. App. at 340. The testimony and the video establish that appellant never

- 14 -

moved from the officers' "immediate span of control" as he resisted being handcuffed. *Id.* at 341. Because appellant never fled from Simmons by "running away" or "physical[ly] mov[ing] beyond the scope of the officer's immediate span of control," the evidence does not support his conviction under Code § 18.2-460(E). *Id.* This Court therefore reverses that conviction.

CONCLUSION

For the foregoing reasons, we reverse appellant's conviction for attempting to prevent his arrest by fleeing from a law enforcement officer and affirm his convictions for assault and battery of a law enforcement officer, attempting to disarm a law enforcement officer, trespass, and disorderly conduct.

*Affirmed in part and reversed in part.*