**Richmond**

CHARLES LEE REED

v.

COMMONWEALTH OF VIRGINIA

No. 1023-86

Decided March 15, 1988

COUNSEL

John H. McLees, Jr., Richmond Public Defender (Office of the Public Defender, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.** — Charles Reed, who appeared *pro se* in the trial court, was convicted of criminal trespass and fined $75 in accord with the jury's verdict. He appeals that conviction.

The reasons which caused the complainant, McCarthy Construction Company, to lodge criminal charges against Reed are in dispute; however, the facts leading up to and surrounding the incident are not in controversy. Reed was living in an abandoned shack on Belle Island (owned by the City of Richmond) when McCarthy Construction Company apparently obtained a 280-foot right-of-way across the island to build a bridge in February of 1985. McCarthy agreed to provide Reed shelter on the island if he would guard the company's equipment. The company first housed him in a trailer bed inside the fenced-in compound where McCarthy kept its tools; later they constructed a small shack within the compound. It is not clear where the compound was located with respect to the right-of-way. Reed was given a CB radio to summon help in case of trouble. He also did some welding for McCarthy for extra pay. The arrangement soured when Reed began selling concessions to McCarthy's workers and wiring loud speakers to play music on the job site. Sometime in the winter of 1985-86, McCarthy officials asked Reed to turn off the radio and remove the refrigerator, drink machines and coffee pot he used for the concessions. Reed refused, stating he had a "contract." On that occasion, McCarthy called the police and asked them to remove Reed. The record does not reflect what happened on that occasion, but shows that McCarthy called the police again before May 14, 1986. On May 14, McCarthy called the police for the third time and Reed was arrested for trespassing.

In this appeal Reed asserts three errors: (1) the trial court excluded evidence that his prior felony conviction was based on perjured testimony; (2) the evidence was insufficient to support the conviction; and (3) the court failed to instruct the jury that a bona fide claim of right is a defense to trespassing, although appellant did not request such an instruction. Because we find that the evidence was insufficient to support the conviction, we do not address the issue of jury instructions.

At trial a public defender was designated and available to counsel Reed, but Reed never consulted him. Before the trial began, Reed noted to the judge that two of his witnesses were not present. Reed had caused subpoenas to be issued two days prior to trial but the service had been unsuccessful because Reed gave the wrong address for one and the other was on vacation. When asked about what these witnesses would testify, Reed indicated that they

would show that his prior felony conviction was based on perjured testimony and was connected with Reed's current difficulties with the Commonwealth. The court ruled that even if the witnesses were present the court had no discretion to admit their testimony because Reed would not be allowed to go into the details of his prior conviction. Reed did not testify at trial, and he made no motions to strike the Commonwealth's evidence. His evidence introduced through a former employee of McCarthy, two police officers, a current employee of McCarthy, and an assistant Commonwealth's attorney, indicated that he was on the property by agreement with McCarthy and that McCarthy wanted to get rid of him because he would not weld as much as McCarthy wanted. McCarthy did not dispute that it initially agreed to permit Reed to remain on the property but contended that Reed breached his agreement, was given notice to vacate, and failed to do so, thus making him a trespasser.

At the conclusion of the evidence, the trial judge asked for instructions. He reminded Reed that the advice of counsel was particularly important at the instruction phase of a trial. Reed reviewed the prosecutor's instructions and said they were adequate. He requested no instruction to the effect that a bona fide claim of right is a defense to a criminal trespass charge and none was given.

After the jury's guilty verdict, Reed moved to set it aside and noted this appeal from the court's conviction order. The court appointed and Reed accepted counsel for the appeal.

## I.

Reed argues that the trial court denied him the right to call for evidence in his favor when it ruled inadmissible the testimony of the witnesses who would prove that his former conviction was based on perjured testimony. He asserts that this error was not harmless as the court's ruling prevented him from testifying. Although there is no right to call for irrelevant or inadmissible evidence in one's favor, Reed correctly asserts that, under Virginia law, a criminal defendant whose testimony is impeached by evidence of a prior felony conviction has the right to introduce limited evidence to show that the prior conviction was obtained on the basis of perjured testimony. *Smith v. Commonwealth*, 161 Va.

1112, 1117-18, 172 S.E. 286, 288 (1934); *Chrisman v. Common-wealth*, 3 Va. App. 89, 98, 348 S.E.2d 399, 403-04 (1986). Thus, he argues, the testimony of the absent witnesses would have been relevant and admissible. In this case, however, unlike *Smith*, Reed's testimony was not impeached because Reed did not testify. Unless the defendant testifies, "[a]ny possible harm flowing from [a trial court's] ruling permitting impeachment by a prior conviction is wholly speculative." *Luce v. United States*, 469 U.S. 38, 41 (1984). Although *Luce* involved an interpretation of Federal Rule of Evidence 609 and was not of constitutional dimension, we find the analysis persuasive and we adopt its reasoning to apply to our rules of evidence. Thus, because Reed did not testify, we cannot determine whether the prosecutor would have used the prior conviction, or whether the judge would have allowed Reed to explain his contention as to how it was improperly obtained. In *Luce*, the United States Supreme Court noted:

> [A]n accused's decision whether to testify "seldom turns on the resolution of one factor" [and] a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify . . . . Requiring . . . a defendant to testify [to preserve the issue for appellate review] will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.

*Id.* at 42 (citations omitted).

Reed may not raise the issue of improper impeachment when none occurred. Nor can he complain that the court's ruling on the admissibility of evidence to explain the conviction was erroneous. When Reed failed to testify, evidence of his prior conviction was irrelevant, immaterial and thus inadmissible. Likewise, evidence tending to explain the conviction was irrelevant, immaterial and inadmissible. Thus, Reed was not denied his right to call for relevant, admissible evidence in his favor.

## II.

Reed also argues that the evidence was insufficient to support the conviction. He argues that the undisputed evidence established

that he was living on the island under an agreement, and therefore, he was there under a bona fide claim of right. Although claim of right is an affirmative defense and thus usually a question for the trier-of-fact, Reed argues that, when the undisputed evidence establishes an affirmative defense as a matter of law, the court may not allow a guilty verdict to stand.

We first note that Reed did not move to strike the evidence at the close of the prosecution's evidence, nor did he move to strike at the close of all the evidence. After the verdict he moved to set it aside as contrary to the evidence. The judge denied the motion. Under Rule 5A:18, we will not consider rulings by the trial court as a basis for reversal unless a party or counsel timely objected at trial and stated the grounds for the objection at the time of the ruling. An exception to the general rule is appropriate when consideration is necessary "to enable the Court of Appeals to attain the ends of justice." The issue of sufficiency of the evidence was not properly preserved in this case, so unless it is necessary that we consider it under the exception, the issue has been waived.

■ The "ends of justice" provision is a narrow one that allows consideration when the record affirmatively shows that a miscarriage of justice has occurred. *Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). It is not sufficient that the record show that a miscarriage of justice *might* have occurred. In *Ball v. Commonwealth*, 221 Va. 754, 273 S.E.2d 790 (1981), the Virginia Supreme Court reversed a conviction of capital murder despite the appellant's failure to object to erroneous jury instructions because the record clearly showed that defendant could only have been guilty of first degree felony murder. We find that the case before us presents the certainty of a miscarriage of justice apparent in *Ball*.

■ Reed was charged with criminal trespass in violation of Code § 18.2-119, which prohibits unlawfully remaining upon the land of another after being forbidden to do so. On its face, the criminal trespass statute appears strikingly similar to common law civil trespass. As a penal statute, however, the Virginia criminal trespass statute has been uniformly construed to require a willful trespass. *Campbell v. Commonwealth*, 41 Va. (2 Rob.) 791 (1843).

> Criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent, and if the act prohibited is committed in good faith under claim of right . . . although the accused is mistaken as to his right, unless it is committed with force . . . no conviction will lie . . . .

75 Am. Jur. 2d *Trespass* § 87 (1974). Therefore, one cannot be convicted of trespass when one enters or stays upon the land under a bona fide claim of right. *Wise v. Commonwealth*, 98 Va. 837, 36 S.E. 479 (1900). A good faith belief that one has a right to be on the premises negates criminal intent. The *Wise* decision appears to be the most recent decision that has defined what constitutes a bona fide claim of right in Virginia. In *Wise*, the defendant was not permitted to prove that the complainant had verbally contracted to transfer the disputed land to him. The Supreme Court reversed the conviction, holding that, although the purported verbal contract would not be admissible to prove a title transfer, it would "bear upon the *bona fides* of a claim of right" and should have been admitted. *Id.* at 838, 36 S.E. at 479.

■ Other states have recognized that a bona fide claim of right precludes a conviction of criminal trespass. Recently, a Minnesota court noted that a claim of right is not limited to a claim of title or legal ownership. It held that a woman's bona fide claim of right to enter a nursing home based on twenty-two months of daily visits and authorization from the patient's guardians negated criminal intent to trespass even though she had received a letter revoking visiting privileges. *State v. Hoyt*, 304 N.W.2d 884, 889 (Minn. 1981); *see also State v. Ellen*, 68 N.C. 281 (1873) (bona fide claim of right when defendant claimed under contract to purchase); *Hayes v. State*, 13 Ga. App. 647, ＿＿, 79 S.E. 761, 762 (1913) ("An act which . . . might appear to be trespass is not in fact a trespass, if the act is committed in good faith by one who actually and sincerely believes that he is authorized (either because authorized by the true owner, or because he believes himself to be the true owner) to do the act in question").

■ Thus, we hold that a bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property. The claim need not be one of title or ownership, but it must rise to the level of authorization.

The undisputed evidence in this case established that Reed was on the island based on the agreement with McCarthy. In exchange for his services as night watchman, Reed could stay on the island and McCarthy would build him a shelter. We need not ascertain the details of that agreement, nor define the precise legal nature of Reed's occupancy or right to be on the island. Those are questions for a civil jury; the criminal trespass statute does not afford a substitute for landlord tenant disputes. *See* 75 Am. Jur. 2d *Trespass* § 87 (1974); *see also United States v. Miller*, 659 F.2d 1029 (10th Cir. 1981); *State v. Larason*, 143 N.E.2d 502 (Ohio Ct. Comm. Pl. 1956). The existence of that agreement is undisputed and the evidence shows that Reed, without regard to whether his claim on the agreement might prevail, was asserting a sincere, good faith claim to be and remain on Belle Island. Even if in a civil proceeding Reed's tenancy might be held terminable at will, he in good faith contended that the agreement conferred the right for him to remain there. We hold that he established a bona fide claim of right as a matter of law. Because he acted on that good faith belief, he could not have the requisite intent for a criminal trespass conviction. That his belief may have been wrong or that he could have been evicted in a civil action does not render his conduct criminal. Without the criminal intent he committed no criminal trespass. We hold, therefore, that at the conclusion of all the evidence or after the jury's verdict the trial judge should have granted the motion to set the verdict aside because as a matter of law no criminal trespass occurred.

Since we reverse and dismiss on the grounds of sufficiency of the evidence, we do not reach the issue of the jury instructions.

*Reversed and dismissed.*

Benton, J., and Cole, J., concurred.