COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


GILBERT W. COOPER

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1154-00-3      JUDGE ROBERT J. HUMPHREYS
                                         APRIL 17, 2001
COMMONWEALTH OF VIRGINIA,
 DEPARTMENT OF SOCIAL SERVICES,
 DIVISION OF CHILD SUPPORT ENFORCEMENT,
 ex rel. CYNTHIA (COOPER) WOOLDRIDGE


            FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                   George E. Honts, III, Judge

          (Onzlee Ware, on brief), for appellant.
          Appellant submitting on brief.

          Stephanie Cangin, Special Counsel (Mark L.
          Earley, Attorney General; Ashley L. Taylor,
          Jr., Deputy Attorney General; Robert B.
          Cousins, Jr., Senior Assistant Attorney
          General, Craig M. Burshem, Regional Special
          Counsel; Alice G. Burlinson, Regional Special
          Counsel, on brief), for appellee.


     Gilbert W. Cooper appeals a finding against him of civil

contempt of court for failure to pay child support.  Cooper

contends that the trial court erred in finding him in contempt

because he did comply with the trial court's order for payment

of child support.

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.   Background

On October 21, 1993, the juvenile and domestic relations district court ordered Cooper to pay child support in the amount of $200 per month for the support of Megan, his two-year-old daughter.  Cooper failed to pay the support as ordered and was brought to court by the Division of Child Support Enforcement (DCSE) on several occasions during the following months.  In April of 1998, Cooper was ultimately found in contempt by the juvenile and domestic relations court and sentenced to six months in jail.

The circuit court heard Cooper's appeal, ore tenus, on March 16, 1999.  The circuit court found Cooper guilty of contempt for failure to pay child support and established the arrearage at $12,436.47 in principal and $2,873.11 in interest. The court sentenced Cooper to serve an "indeterminate" jail sentence that Cooper could purge by paying the arrears in full. However, the court delayed the imposition of the jail sentence to June 8, 1999 on the condition that Cooper "pay his current support obligation of [$200] a month with an additional [$100] a month toward the arrears due."

The matter was reviewed on July 6, 1999.  By order entered August 9, 1999, the court again found Cooper guilty of contempt for failure to pay child support and established the arrearage at $11,329.78 with $3,134.82 in interest.  The court sentenced Cooper to serve a 12-month jail sentence, which could be purged

by paying the arrears in full. However, the court again suspended the imposition of the jail sentence upon the condition that Cooper "pay $200.00 a month on his current support obligation with an additional $100.00 a month on the arrears." The court stated "[t]he total payment [Cooper] is to pay is $300.00 per month for the support of Megan . . . ." If Cooper missed a payment, the court ordered DCSE to notify the court, so that a capias could be issued, forcing Cooper to begin serving the 12-month jail sentence. The court then continued the matter to July 6, 2000 for yet another review.[1]

On December 22, 1999, DCSE filed a Petition for Order to Show Cause in the circuit court, alleging that Cooper had made "sporadic partial payments through Virginia Department of Social Services since August 9, 1999." DCSE requested that a capias and order to show cause issue, requiring Cooper to appear and explain why he should not "be held in contempt of court and fined, imprisoned or both for the failure to comply with the order [of August 9, 1999]."

At the April 20, 2000 hearing on the petition, DCSE court specialist, Patricia White Boyd, testified that Cooper had paid

---

[1] Due to a typographical error in the order, which resulted in a separate paragraph stating "[t]he court will issue a capias and respondent will begin serving his jail sentence," a capias issued on August 10, 1999. Although Cooper had not disobeyed the court order, Cooper was arrested on August 16, 1999. Cooper was released on bail on August 17, 1999 and the order was corrected, suspending Cooper's sentence "until further order [of the court]."

the following payments to DCSE, as required by the August 9,

1999 court order:

| | |
|---|---|
| July 1999 | $300.00 |
| August 1999 | $300.00 |
| September 1999 | $300.00 |
| October 1999 | $300.00 |
| November 1999 | $300.00 |
| December 1999 | $300.00 |
| January 2000 | $300.00 |
| February 2000 | $572.00 |
| March 2000 | $  0.00 |

Boyd further testified that the money Cooper had paid each month

was taken by DCSE and divided among Cooper's other "open cases

to pay child support through DCSE," as required by Code

§ 63.1-251.2.[2]  As a result, Megan's mother received only the

following amounts:

| | |
|---|---|
| July 1999 | $200.00 |
| August 1999 | $ 88.89 |
| August 1999 | $ 35.71 |
| September 1999 | $133.33 |
| October 1999 | $150.00 |
| November 1999 | $150.00 |
| December 1999 | $133.33 |

---

[2] Code § 63.1-251.2 provides the following in relevant part:

> Support payments received by the Department
> of Social Services or the Department's
> designee shall be prorated among the
> obligees based upon the current amounts due
> pursuant to more than one judicial or
> administrative order, or a combination
> thereof, with any remaining amounts prorated
> among the obligees with orders for accrued
> arrearages in the same proration as the
> current support payments.

Apparently, Cooper had another child, residing in Bedford County, for whom he also owed monthly child support.  DCSE had a separate account open for the receipt of that child's support payments as required by this statute.

|              |          |
|--------------|----------|
| January 2000 | $150.00  |
| February 2000 | $150.00 |
| February 2000 | $222.00 |
| March 2000   | $  0.00  |

Megan's mother testified that she had received no direct payments from Cooper.  Cooper presented no defense and raised no objection to the proceedings and findings of the court.

"Upon completion of the evidence and argument by counsel," by an order entered on May 23, 2000, the court found Cooper "guilty of contempt for failing to comply with [the court's order] dated August 9, 1999," and imposed the 12-month jail sentence.  The court further provided that the sentence could be purged by payment in full of the arrearage amount, plus interest, which was found to be $15,441.31.  Cooper's counsel endorsed the court's final order without objection.

On appeal, Cooper argues for the first time that the trial court erred in finding him guilty of contempt because he had complied with the August 9, 1999 order, which applied only to Megan.  Cooper argues he had no knowledge that the payments he had made were not being applied in full to Megan's account.

DCSE contends that Cooper's appeal is barred by Rule 5A:18 due to his failure to preserve assignments of error during the proceedings below.  DCSE further contends that the court order required Cooper to pay the full amount on behalf of Megan and that since it was required by statute to prorate payments made

to each open account, Cooper was on notice that Megan would not receive the full $300.

## II. Analysis

Cooper's counsel filed a proposed Written Statement of Facts which was objected to in detail by counsel for DCSE. Counsel for Cooper responded by letter agreeing that DCSE's "Objection to Respondent's Written Statement of Facts" more accurately reflected the proceedings and on that basis, the trial court signed the statement of facts proposed by DCSE.

The written statement of facts endorsed by the trial court demonstrates that Cooper, indeed, preserved no objection or assignment of error for purposes of effecting an appeal. Moreover, he presented no evidence in his defense.

Rule 5A:18 provides the following:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

Thus, "[u]nder Rule 5A:18, we will not consider rulings by the trial court as a basis for reversal unless a party or counsel timely objected at trial and stated the grounds for the objection at the time of the ruling. [However,] [a]n exception to the general rule is appropriate when consideration is

necessary to enable the Court of Appeals to attain the ends of justice." Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988) (citations omitted). Cooper urges this Court to consider his appeal under this exception.

"The ends of justice provision is a narrow one that allows consideration when the record affirmatively shows that a miscarriage of justice has occurred. It is not sufficient that the record show that a miscarriage of justice might have occurred." Id. (citations omitted) (emphasis in original). Here, the record proves only that a miscarriage of justice might have occurred.

"A trial court has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order." Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (citation omitted). "In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court. The offending party then has the burden of proving justification for his or her failure to comply." Commonwealth ex rel. Graham v. Bazemore, 32 Va. App. 451, 455-56, 528 S.E.2d 193, 196 (2000).

The August 9, 1999 order clearly required Cooper to pay $300 per month for the "support of Megan." Although Cooper

made payments of at least $300 per month to DCSE, the agency proved that Megan did not receive the full amount per month and that Cooper paid nothing in March of 2000. Thus, DCSE effectively shifted the burden to Cooper to prove justification for his failure.

Cooper now argues that he had no knowledge the full amount was not being applied to Megan's account. "Usually ignorance of the law is no excuse, and everyone is conclusively presumed to know the law . . . ." King v. Empire Collieries Co., 148 Va. 585, 590, 139 S.E. 478, 479 (1927). However, "[t]here cannot . . . be a willful failure to perform an unknown duty." Id. On the record before us, we cannot hold that Cooper had no knowledge of the proration because, according to the written statement of facts, Cooper presented no such evidence to the trial court. Id.

Cooper next argues, also for the first time on appeal, that his failure to pay in March was due to his incarceration. It is true that "the inability of an alleged contemnor, without fault on his part, to tender obedience to an order of court, is a good defense to a charge of contempt." Commonwealth ex rel. Graham, 32 Va. App. at 455-56, 528 S.E.2d at 195. However, there is nothing in the record to show that the trial court was presented with evidence regarding Cooper's incarceration, or that the

court was presented with an explanation for the incarceration. Furthermore, Cooper presented no evidence to suggest that his incarceration would have affected his ability to make payment.

Unfortunately, because Cooper presented no evidence on his behalf and because the parties chose to file a written statement of facts instead of a transcript of the hearing, we have no evidence upon which to base consideration of Cooper's arguments on appeal, nor do we know which facts the trial court relied upon to make its ruling. Accordingly, we can find only that a "miscarriage of justice" might have occurred. This finding is insufficient to allow us to consider the matter any further on appeal. See Jimenez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991) ("The ends of justice exception is narrow and is to be used sparingly . . . . [I]t is a rare case in which, rather than invoke Rule 5A:18, we rely upon the exception and consider an assignment of error not preserved at trial . . . ."). Thus, we affirm the decision of the trial court.

As a final matter, we note our concern with the performance of Cooper's court-appointed counsel in the prosecution of this appeal. We find that the representation provided Cooper by his court-appointed counsel fell below the standard expected of counsel who serve on a court-appointed basis and accordingly,

order that no attorney fees be paid to Cooper's court-appointed

counsel for his services in connection with this appeal.[3]

Affirmed.

---

[3] Our concerns run not merely to the deficiencies already noted, but also to the repeated failure to comply with the Rules of the Virginia Supreme Court. On appeal, counsel for Cooper failed to file the opening brief in the appropriate form. Further, counsel failed to file an appendix in conjunction with the opening brief, as required by Rule 5A:25(a). In addition, according to DCSE, counsel for Cooper failed to discuss and/or enter into an agreed designation of the appendix with opposing counsel. Cooper's counsel also failed to file a statement of the questions to be presented and a designation of the contents to be included in the appendix, as required by Rule 5A:25(d). As a result, DCSE filed an appendix unilaterally. Subsequently, in response to a show cause order issued by this Court, and more than a month after filing his initial brief, counsel for Cooper prepared and filed a replacement brief in the appropriate format, as well as a separate appendix, which contained many of the same documents contained in DCSE's appendix. However, Cooper's counsel provided this Court with no explanation for his failure to file an appropriately formatted opening brief, a designation of appendix or an appendix, as required by the Rules of the Virginia Supreme Court.

While we did not view these errors as sufficient to warrant dismissal of Cooper's appeal, we are nonetheless concerned with the multiplicity of errors and the resulting additional costs to the Commonwealth incurred in correcting them.