# COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Callins and White
Argued at Alexandria, Virginia

<div style="vertical-align: middle; writing-mode: vertical-rl;">UNPUBLISHED</div>

LUKA KARTOZIA

v.          Record No. 1633-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE VERNIDA R. CHANEY
MARCH 5, 2024

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Marc Canellas, Assistant Public Defender, for appellant.

Collin C. Crookenden, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Luka Kartozia appeals a misdemeanor conviction for trespass in

violation of Code § 18.2-119. Kartozia contends that the circuit court erred in (i) refusing his

proposed jury instruction regarding the claim of right defense to trespass and (ii) denying his motion

to strike the evidence.[1] This Court holds that the circuit court abused its discretion in refusing to

instruct the jury on the claim of right defense to trespass. Accordingly, we reverse Kartozia's

trespass conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Kartozia elected not to pursue his appeal based on his original assignments of error
alleging that the circuit court also erred in refusing his requested jury instructions "as to notice of
the proscription against entry[] and who is lawfully in charge of the property." Op. Br. 6 n.3.

BACKGROUND

A. The Alleged Trespass

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

Around midnight on February 23, 2022, Herman Austin, a security guard and concierge at Turnberry Tower in Arlington, was on security patrol when he observed Kartozia at the back entrance of the property. Austin observed that Kartozia was "doing squats" and pacing back and forth in the garden. Apart from attracting Austin's attention, Kartozia's conduct was not disruptive. Austin approached Kartozia and said, "This is private property. . . . [I]f you don't know anyone here, I'm going to have to ask you to leave." Then Austin asked, "Do you know anyone here?" Kartozia replied, "Yes," and named resident Phil Yang.

After Kartozia informed Austin that he knew resident Yang, Austin inquired, "[W]ould you like for me to call him?" Kartozia replied, "[N]o." Then Austin "just left him alone" and completed his patrol. Although Austin, as a security guard and concierge at Turnberry Tower, had the ability to call Yang at that time, Austin did not call him. Instead, Austin told his supervisor, Eric Walker, about his encounter with Kartozia and informed Walker that Kartozia "says he knows Phil Yang."

Before Austin encountered Kartozia, Walker observed Kartozia on a security monitor as Kartozia "pull[ed] up on a bicycle" at the property's back entrance. Walker saw Austin interact with Kartozia on camera, but there was no audio, so Walker did not hear their conversation.

After Austin informed Walker about his encounter with Kartozia, Walker went outside with Austin and spoke with Kartozia. At that time, Kartozia was doing exercises near two benches at the building's rear entrance. Walker said, "[A]re you here for someone? We can call

them. If not, you have to leave." In response, Kartozia asked Walker, "[W]hy are you so mad?" Kartozia did not ask Walker to call Yang. Walker replied, "[S]ir, if you're here for someone, we'll call them. If not, you're going to have to leave the property." Kartozia responded, "[D]o what [you] have to do." Then Walker returned inside and—instead of calling Yang—called Arlington police. Walker testified that although he had the ability to contact Yang using the building's communications system, he did not contact Yang because he was not asked to contact him. Walker testified that he would have called Yang if Kartozia had directed him to call him.

Around 1:30 a.m. on February 23, 2022, Officer Reed was dispatched to Turnberry Tower in response to an alleged trespass. Walker told Officer Reed that he and Austin had asked Kartozia to leave, but Kartozia remained in the patio area after several requests to leave.

Officer Reed approached Kartozia and explained to him that the security guards wanted him to leave. When Officer Reed asked Kartozia several times why he was there, Kartozia replied that he was visiting Phil Yang, his friend who resided there. Officer Reed told Kartozia that he was not breaking any laws if he was there waiting for his friend and his friend came down.

When Officer Reed inquired whether Kartozia could get in contact with Yang, Kartozia said that "wasn't his responsibility. Security should do it." At one point, Kartozia unplugged his phone, told Officer Reed that he "had Phil in the phone," and asked if it would help if he could contact him. When Officer Reed told him "Yes," Kartozia said he was not going to do that. Kartozia did not contact Yang, and Yang did not come down to get him.

Officer Reed told Kartozia that he was trying to confirm that his friend Phil Yang lived there. But Officer Reed did not try to contact Yang and did not direct the security guards to call Yang. Officer Reed testified that to his knowledge, no one called Yang.

- 3 -

The police asked Kartozia "at least six or seven times" to leave the property. Officer Reed testified that Kartozia was very uncooperative and used vulgar sexual terms when referring to the police. After interacting with Kartozia for ten or fifteen minutes, the police arrested Kartozia upon confirming that "security wanted to prosecute for trespassing." Officer Reed testified that the police never confirmed whether Kartozia was a guest of resident Phil Yang.

Phil Yang testified as a defense witness at trial. Yang owns an apartment in the Turnberry Tower and, at the time of trial in August 2022, he had resided there for about four years. He and Kartozia had been friends for three or four years, and Kartozia had visited Yang at his apartment around five to seven times.

Yang explained that when he had guests—who usually arrived at the front lobby—the security guard would ask them who they were there to see and would then call him and send the guest up after Yang gave his permission. Yang testified that he was home in his apartment on the night of February 23, 2022, but neither the security guards nor the police contacted him that night.

Kartozia testified that he went to Turnberry Tower on February 23, 2022, to visit Phil Yang, whom he had visited many times. When he visited Yang, Kartozia "could just pull up and say, Phil, I'm here." Yang did not know that Kartozia was coming that night. Kartozia's "phone was dead" when he arrived at Turnberry Tower, so he plugged his phone charger into a power outlet near the benches in a seating area at the back entrance. Kartozia explained that he was charging his phone so he could contact Yang. Kartozia did yoga exercises while he waited for his phone to charge. Kartozia's phone was "really old," and "it takes a long time for it to charge."

Kartozia further testified that while his phone was charging, a "kid" approached and asked, "[W]hat are you doing?" At first, Kartozia did not know whether he "was with the

building or he was just some guy." Kartozia responded, "What are you doing?" Then the "kid" asked, "Do you know anybody at this building?" Kartozia replied, "[Y]es, Phil Yang." The "kid" responded, "[O]h, Phil . . . oh, okay." Then the "kid" left. By that point, Kartozia recognized the "kid" as someone who had "let [him] up to Phil's many times."

Kartozia explained that when the police arrived, his phone was still not charged, so he refused when officers told him to call Yang and he told the police to call Yang. As the police were asking Kartozia questions, he "felt as though [he] didn't have to answer these questions because [he] knew [he] was there for Phil. And [he] told them [he] was there for Phil."

Kartozia testified that he also told the police:

> [I]f you want to contact Phil, [to] make sure that I'm here for somebody, then you go ahead and do that. Otherwise, I have no business with you and you have no business with me. I'm just charging my phone so I can call up there, but I'm not going to call him because you're telling me to call him because I know I'm here and not trespassing.

Kartozia further testified that he also told the police, "[T]here's no basis of you arresting me because I'm not trespassing."

B. Motions to Strike

After the Commonwealth rested its case-in-chief at trial, Kartozia moved to strike the evidence. Kartozia argued that the element of willfulness was not proved because he told several people that he was there to see resident Phil Yang and both security guards could have contacted Yang. Kartozia also argued that the police officer's testimony established that the officer told him he had a right to be there if his friend was there and would come down to get him. The circuit court denied the motion to strike.

After the close of the evidence and arguments on jury instructions, Kartozia, by counsel, informed the circuit court, "[W]e also bring the motion to strike." Kartozia did not identify the basis of this motion and presented no supporting arguments. The circuit court denied the motion.

C. Refused Jury Instruction on Claim of Right Defense

Kartozia proposed a jury instruction that explained the claim of right defense to trespass. The circuit court rejected the instruction upon finding that there was no "scintilla of evidence that Mr. Kartozia believed he had a good-faith claim to stay after two people told him to leave." The circuit court reasoned:

> [H]is friend didn't even know he was there. So, where—you've got to connect all the dots. . . . Where is the evidence that Mr. Yang was called?
>
> . . . .
>
> He's there at midnight and one o'clock in the morning and never calls his friend. You've got to close the loop. The loop is what's required to get this instruction.
>
> Had he done that, I would give this instruction, but he didn't. No one did.

After further argument, the circuit court expressly agreed with the Commonwealth's analysis and rejected Kartozia's proposed instruction:

> [COMMONWEALTH]: [I]n this case here, the one person who could have given authorization had no idea that Mr. Kartozia was on the property. He was never made aware of it.
>
> And so, there's no way that he could have a good-faith belief that there was any sort of authorization to be there.
>
> THE COURT: That's the problem with it. So, that will not be given.

D. Jury Verdict and Sentencing

The jury found Kartozia guilty of trespass. In accordance with the sentence fixed by the jury, the circuit court imposed a $1,000 fine. This appeal followed.

ANALYSIS

I. Error in Refusing to Instruct the Jury on the Claim of Right Defense

A. Standard of Review

This Court "review[s] jury instructions to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Nottingham v. Commonwealth*, 73 Va. App. 221, 228 (2021) (alteration in original) (quoting *Watson v. Commonwealth*, 298 Va. 197, 207 (2019)). "Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" *Id.* (alteration in original) (quoting *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017)). "However, this Court reviews de novo whether an instruction 'accurately states the relevant law.'" *Id.* (quoting *Ducharme v. Commonwealth*, 70 Va. App. 668, 674 (2019)).

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." *Williams v. Commonwealth*, 64 Va. App. 240, 244 (2015) (quoting *Commonwealth v. Vaughn*, 263 Va. 31, 33 (2002)).

A defendant is entitled to an instruction regarding his theory of the case "when such an instruction is supported by some appreciable evidence." *Harris v. Commonwealth*, 134 Va. 688, 695 (1922). "[T]he evidence asserted in support of such an instruction 'must amount to more than a scintilla.'" *Buchanan v. Commonwealth*, 238 Va. 389, 409 (1989) (quoting *Justus v. Commonwealth*, 222 Va. 667, 678 (1981)). If a proffered instruction on the defendant's theory of defense "finds any support in credible evidence, . . . its refusal is reversible error." *King v. Commonwealth*, 64 Va. App. 580, 587 (2015) (en banc) (quoting *McClung v. Commonwealth*, 215 Va. 654, 657 (1975)).

B.  Evidentiary Support for Instruction on Claim of Right Defense

Kartozia proposed the following jury instruction regarding the claim of right defense to trespass:

> A good faith belief that one has a right to be on the premises negates criminal intent.
>
> If you find from the evidence that Mr. Kartozia believed he had a good faith claim of right to enter onto the property, even though this belief was mistaken, you shall find the defendant not guilty of trespass.
>
> A good faith claim of right is a sincere, although perhaps mistaken, good faith belief that one has a legal right to be on the property. The claim need not be of title or ownership of the property, but it must rise to the level of authorization.

This proposed instruction modifies Virginia Model Jury Instruction 49.500 by adding the first sentence, a quotation from *Reed v. Commonwealth*, 6 Va. App. 65, 71 (1988). As Kartozia contended in the circuit court, his proposed addition to the model jury instruction was necessary to inform the jury about the requisite intent for criminal trespass. *See Jones v. Commonwealth*, 18 Va. App. 229, 232 (1994) ("[A] good faith claim of right to be on the premises negates the requisite intent to engage in a criminal trespass.").

The model jury instruction incorporated in Kartozia's proposed instruction is also based on legal principles stated in *Reed*:

> "Criminal intent is an essential element of the statutory offense of trespass, even though the statute is silent as to intent, and if the act prohibited is committed in good faith under claim of right . . . although the accused is mistaken as to his right, unless it is committed with force . . . no conviction will lie[.]"
>
> . . . .
>
> [A] bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property. The claim need not be one of title or ownership, but it must rise to the level of authorization.

- 8 -

*Reed*, 6 Va. App. at 71 (first two alterations in original) (internal citation omitted). Thus, Kartozia's proposed instruction was an accurate statement of the relevant law.

The circuit court abused its discretion in refusing Kartozia's proposed jury instruction on the claim of right defense because more than a scintilla of evidence supported this defense. The Commonwealth concedes that Kartozia believed he had a right to remain on the Turnberry Tower property.[2] But the Commonwealth contends there was no evidence that Kartozia held this belief in good faith because Yang was not expecting him that night and thus did not authorize his visit. This Court disagrees with the Commonwealth's contention. Taking the evidence in the light most favorable to Kartozia as the proponent of the instruction, we hold that more than a scintilla of evidence supports Kartozia's claim that he had a bona fide belief that he was rightfully on the Turnberry Tower property. Kartozia's trial testimony established that he was at Turnberry Tower to visit his friend Yang, who resided there. According to Yang's trial testimony, Kartozia was his friend and had visited him there upwards of seven times. According to Kartozia's testimony, when he visited Yang, he "could just pull up and say, Phil, I'm here." Kartozia testified that he intended to call Yang himself when his phone finished charging. Although Yang did not know in advance about Kartozia's visit, the evidence supports a reasonable inference that Kartozia believed in good faith that he was welcome to visit Yang that night without advance notice. Thus, the evidence supported Kartozia's claim that he believed in good faith that he had a right to remain at Turnberry Tower that night.

In refusing to instruct the jury about the claim of right defense to trespass, the circuit court failed in its responsibility to ensure that the law was clearly stated for the jury. *See King*, 64 Va. App. at 592 ("[W]hen a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty [to properly] instruct a jury about the matter." (quoting *Jimenez v.*

---

[2] The Commonwealth made this concession in oral argument before this Court.

*Commonwealth*, 241 Va. 244, 250 (1991))). Therefore, the circuit court abused its discretion in refusing Kartozia's jury instruction on the claim of right defense.

The Commonwealth contends that even if the circuit court erred in refusing to instruct the jury on the claim of right defense, such error was harmless because Kartozia's claim of right "was clearly negated by the authorized agents directing him to leave the property multiple times." Appellee's Br. 18. Again, this Court disagrees with the Commonwealth. First, taking the evidence in the light most favorable to Kartozia, neither security guard gave Kartozia an unconditional directive to leave the property. According to Security Guard Austin's testimony, he told Kartozia, "This is private property. . . . [*I*]*f you don't know anyone here*, I'm going to have to ask you to leave." After Kartozia informed Austin that he was there for resident Phil Yang, Austin inquired, "[W]ould you like for me to call him?" Kartozia replied, "[N]o." As Kartozia testified, he intended to call Yang himself when his phone finished charging. After Kartozia declined Austin's offer to call Yang, Austin "just left him alone" and completed his patrol. Soon afterward, Security Guard Walker—accompanied by Security Guard Austin— approached Kartozia and said, *"[A]re you here for someone*? We can call them. *If not*, you have to leave." Subsequently, Walker said to Kartozia, "[S]ir, *if you're here for someone, we'll call them. If not*, you're going to have to leave the property." Granting Kartozia the benefit of reasonable inferences from the evidence, Kartozia had reason to believe that Walker—who approached him with Austin and offered to call the resident—already knew he was there for Yang. Thus, in the light most favorable to Kartozia, Walker's statements did not direct or require Kartozia to leave the property because he was there for a resident.

Second, the circuit court's error in refusing to instruct the jury on the claim of right defense to trespass cannot be harmless error. If Kartozia's proposed instruction on his theory of defense "finds any support in credible evidence, . . . its refusal is reversible error." *King*,

64 Va. App. at 587 (quoting *McClung*, 215 Va. at 657). The circuit court's failure to instruct the jury on the claim of right defense deprived Kartozia of his right to acquittal if the jury, after considering all the evidence, had a reasonable doubt whether Kartozia believed in good faith that he had a right to remain on the Turnberry Tower property that night. Therefore, the circuit court's failure to instruct the jury on the claim of right defense requires reversal of Kartozia's trespass conviction.

## II. Waived Motion to Strike

Kartozia contends that the circuit court erred in denying his motion to strike the evidence because the evidence was insufficient to prove a willful trespass. Kartozia's claim of insufficient evidence fails on appeal because Kartozia failed to make a substantive renewed motion to strike after he presented evidence in his defense. After the close of all the evidence, Kartozia stated merely, "[W]e also bring the motion to strike." Kartozia failed to identify the grounds of the motion and failed to present any supporting arguments. Although Kartozia made a substantive motion to strike on grounds of insufficient evidence after the Commonwealth rested its case-in-chief, his original motion to strike was insufficient to preserve his sufficiency arguments for appeal because the quantum of evidence increased when he presented evidence in his defense. "[P]roperly understood a 'renewed' motion to strike *is a new motion* asking the trial court to apply a prior challenge to the sufficiency of the Commonwealth's case to all the evidence." *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 80 n.5 (2010) (emphasis added). "A renewed motion to strike must 'identify the grounds upon which that relief [is] sought in order for the court to be apprised of what arguments [are] being renewed.'" *Taylor v. Commonwealth*, 58 Va. App. 185, 189 (2011) (alterations in original) (quoting *United Leasing Corp. v. Lehner Fam. Bus. Trust*, 279 Va. 510, 518-19 (2010)). Kartozia waived his sufficiency argument because he failed to contemporaneously identify the specific grounds in support of his

second motion to strike and failed, in the alternative, to move to set aside the verdict based on insufficient evidence. Therefore, this Court cannot reach Kartozia's sufficiency arguments on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."); *see also Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (this Court will not sua sponte apply the exceptions to Rule 5A:18).

## CONCLUSION

The circuit court abused its discretion in refusing to instruct the jury on the claim of right defense to trespass. Therefore, this Court reverses the circuit court's judgment, vacates the trespass conviction, and remands for retrial if the Commonwealth be so advised.

*Reversed, vacated, and remanded.*