# COURT OF APPEALS OF VIRGINIA

## Record No. 1717-24-1

LEON BARCLEY STUSALITUS

v.

COMMONWEALTH OF VIRGINIA

Present: Judges AtLee, Chaney and Bernhard

Argued at Norfolk, Virginia

Opinion Issued May 19, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Scott Joseph Flax, Judge

Leon Barcley Stusalitus, *pro se*.

Catherine E. Spencer, Assistant Attorney General (Jason S. Miyares,[1] Attorney General; Angelique Rogers, Assistant Attorney General, on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE RICHARD Y. ATLEE, JR.

Following a bench trial, the trial court convicted Leon Stusalitus of trespassing, in violation of Code § 18.2-119. Stusalitus raises two issues on appeal. First, he contends that the evidence was insufficient to support his conviction. Next, he argues that Code § 18.2-119 is unconstitutional as applied to his conduct. For the following reasons, we affirm the trial court.

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

On December 12, 2023, Stusalitus went to the Virginia Beach courthouse and completed a form requesting permission to bring a cell phone and audio recording equipment into court.[2] On January 11, 2024, after not yet receiving a response to that request, Stusalitus returned to the courthouse to check on the status of his application. He attempted to take his cell phone and a camera pen through the building's security checkpoint. When Virginia Beach Sheriff's Deputy Pedro Vega told Stusalitus that cell phones were prohibited inside the courthouse, Stusalitus responded that he was not going inside the courthouse but instead down the hallway.[3] Deputy Vega and Stusalitus repeated the exchange twice. Deputy Vega then told Stusalitus that he must put the phone in his vehicle or in one of the lockers, which were located both outside the courthouse and inside the courthouse next to the front entrance. At that point, Sergeant Mark Rupert approached Stusalitus, and Deputy Vega stepped away from the conversation.

Sergeant Rupert introduced himself to Stusalitus and asked if he needed assistance. Stusalitus asked why he was not allowed to have his cell phone in the building, and the two men had a "brief conversation." Stusalitus began to ask Sergeant Rupert "hypothetical questions" such as, "What if I put this phone in my pocket and just walk past you?" Realizing that the

---

[2] Pursuant to a December 2022 court order, non-attorney civilians are prohibited from possessing "[l]aptop computers, cellular telephones, camera phones or other electronic or personal communication devices . . . in the Court Building" unless authorized by the presiding judge. The order further provides that "willful violation . . . may be punished as contempt or prosecuted as trespass, as applicable."

[3] Outside the courthouse, at least three signs were posted stating that cell phones are prohibited inside the building, and an additional sign prohibiting the use of cell phones inside the building is located at the top of the stairs leading into the main entrance. The courthouse lobby contains lockers with posted signs stating, "TURN OFF CELL PHONES & PLACE IN LOCKERS."

situation was "going to devolve into something deeper" than merely answering questions, Sergeant Rupert activated his body camera.

After the body camera was activated, Stusalitus pulled his cell phone from his pocket and said, "I'll show it again for your camera." He stated that he was in a "publicly accessible hallway" and asked, "If I go past you with the cell phone in my pocket, what then happens to me?" Sergeant Rupert repeated that Stusalitus was not allowed to have his cell phone. Stusalitus said "ok" and asked, "and then what?" Sergeant Rupert told him to "either put it where it's supposed to be, or you'll leave the building." Stusalitus asked, "and what if I don't?" Sergeant Rupert answered that Stusalitus could be arrested for trespassing because the sergeant already explained that cell phones were prohibited. Sergeant Rupert further stated, "If you refuse to leave, then it will be trespassing."

During the conversation, a woman walked by the door behind Sergeant Rupert, so he asked Stusalitus to move to stop blocking the door. When Stusalitus refused to move away from the door, Sergeant Rupert took his right hand and touched Stusalitus's left elbow. Stusalitus twice asked Sergeant Rupert not to touch him, and Sergeant Rupert responded that the conversation was over and twice asked Stusalitus to leave. Stusalitus told Sergeant Rupert that he "can ask all [he] want[s]" for Stusalitus to leave and stated that "if [Seargeant Rupert] [was] telling [him] to leave under threat of arrest, [he] w[ould] leave."

Sergeant Rupert reiterated that Stusalitus could place his phone in a locker or he could leave, and he then asked about the purpose of his visit. Stusalitus replied, "I'm trying to see if you will violate my rights or uphold my rights." When Sergeant Rupert asked if Stusalitus was attempting to "goad" him into violating his rights, Stusalitus denied that assertion and stated that he wanted to see the court clerk to complete a permission form to bring his phone in the courthouse. After an exchange about whether Stusalitus could record his interaction with the

court clerk, he asked, "may I go in?" to which Sergeant Rupert stated, "if you lock th[e phone] up." Stusalitus responded, "Okay, I am not going to lock it up, could I [go in] please?" Sergeant Rupert told him no and that his options were to put his phone in a vehicle or a locker or that he could leave. A deputy even offered Stusalitus a quarter for the locker.

Stusalitus again asked the deputies how they would respond if he walked past them, and Sergeant Rupert told Stusalitus he was not going to walk past them. Stusalitus retorted, "What would you do if I tried?" Sergeant Rupert warned, "See, that's . . . where we sometimes have to use force with people. And you're putting it to that point where we're gonna have to use force. We've explained to you your options and you're refusing to do anything." Stusalitus contended that using force was illegal if no crime was committed. He accused Sergeant Rupert of trying to push him and claimed that it was an "assault."

Sergeant Rupert then stated, "I've explained to you what your options were, and if you didn't want to follow them . . . then it was going to be trespassing . . . . Are you ready to trespass?" Stusalitus asked, "What do you mean, am I ready to trespass?" Sergeant Rupert asked, "Are you coming in or are you leaving?" Stusalitus responded that he was trying to come in, and Sergeant Rupert responded, "I've explained to you how you can do that, but you don't want to seem to follow those rules."

Stusalitus then stated, "Well, I mean, if you're telling me I'm going to be arrested unless I leave, then I'll leave." Sergeant Rupert responded, "Alright you're going to be arrested unless you leave." Stusalitus asked, "Are you sure about that?" When Sergeant Rupert said yes and asked if Stusalitus was ready, Stusalitus asked, "Do you know that's against the law?" Sergeant Rupert then grabbed Stusalitus's left elbow and arrested him for trespassing.

At trial, after the Commonwealth rested, Stusalitus moved to strike the evidence as insufficient to prove he was trespassing. He argued that he was merely "trying to get permission

to bring his cell phone in" and that the evidence failed to show he was prohibited from entering the courthouse or that he refused to leave after Sergeant Rupert ordered him off the property. He specifically contended that there was insufficient evidence of criminal intent because he was arrested only "five seconds" after he was told to leave. Noting that the deputies repeatedly asked him to leave, the trial court found that Stusalitus did not have a good-faith belief that he could stay in the courthouse and denied the motion to strike.

Stusalitus testified in his own defense. He admitted that he knew that he could not bring a cell phone into the courthouse without authorization and conceded that he had previously applied for permission to do so. He denied reading the courthouse signs but admitted to "notic[ing] there were things there." He acknowledged that the signs said he could not bring his cell phone into the building and defined the word "building" as "the entirety of the structure." He testified that when Sergeant Rupert told him to leave under the threat of arrest, he walked toward the door "on [his] own free will" and intended to leave.

Stusalitus renewed his motion to strike at the conclusion of all the evidence, arguing that he was not given reasonable time to comply with Sergeant Rupert's demand for him to leave and that he had a bona fide claim of right to remain at the courthouse. He asserted that there was insufficient evidence of criminal intent. The trial court again denied the motion. Stusalitus now appeals.

ANALYSIS

A. *The trial court properly denied the motion to strike.*

Stusalitus contends that the evidence was insufficient to sustain his trespass conviction. He makes several arguments. He asserts that the record supports that he had a bona fide claim of right to remain at the courthouse, that the evidence was insufficient to show he was afforded a reasonable

opportunity to leave the premises after being directed to leave, and that the evidence was insufficient to prove willful intent.[4] We disagree.

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

1. <u>The record does not support Stusalitus's assertion that he had a bona fide claim of right to remain in the courthouse after receiving a directive to leave.</u>

Code § 18.2-119 provides in pertinent part: "If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing," by any person "lawfully in charge thereof," he shall be guilty of a Class 1 misdemeanor. "However, 'one cannot be convicted of trespass when one enters or stays upon the land under a bona fide claim of right.'" *Commonwealth v. Kartozia*, 304 Va. 321, 332 (2025) (quoting *Reed v. Commonwealth*, 6 Va. App. 65, 71 (1988)). "[A] bona fide claim of right is a sincere, although perhaps mistaken, good-faith belief that one has

---

[4] In his first assignment of error, Stusalitus also challenges the trial court's interpretation of Code § 18.2-119. Specifically, he argues that the deputies lacked authority under the statute to ban him from the courthouse and that the courthouse was a thoroughfare excluded from the reach of Code § 18.2-119. However, because Stusalitus did not raise these arguments in the trial court, they are not preserved and we do not consider them. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

some legal right to be on the property." *Id.* (alteration in original) (quoting *Reed*, 6 Va. App. at 71). "The claim need not be one of title or ownership, but it must rise to the level of authorization." *Id.* (quoting *Reed*, 6 Va. App. at 71). "Thus, a good faith defense requires more than abstract good faith; it requires a good-faith belief, supported by objective facts that, if true, rise to the level of being an authorization to enter or remain on the premises." *Id.* at 332-33. "Apart from statutory exceptions, legal authorization to enter or remain on private property requires permission from the property 'owner, lessee, custodian or the agent of any such person, or other person lawfully in charge thereof,'" which are also "the same individuals with authority to exclude one from private property." *Id.* at 333 (quoting Code § 18.2-119).

Here, there are no objective facts on which this Court can conclude that Stusalitus had a reasonable, good-faith belief that he was authorized to remain on the premises after being instructed to leave. Stusalitus argued with the deputies for over ten minutes and, during the encounter, he repeatedly challenged their explanations of the rules he was required to follow to remain in the courthouse. Sergeant Rupert explained to Stusalitus several times that his options were to put his cell phone in his vehicle or a locker. Approximately six minutes before the arrest, Sergeant Rupert informed Stusalitus that he would be asked to leave if he did not comply with one of these options and warned that he would be arrested for trespassing if he refused that directive. Beyond that, Stusalitus even conceded at trial that he knew he could not bring a cell phone into the courthouse without authorization, which he did not have.

Even assuming Stusalitus genuinely believed, as he maintains, that he had the legal right to remain in the courthouse lobby because it was open to the public, "a sincere belief alone is not sufficient to create a bona fide claim of right." *Kartozia*, 304 Va. at 333. Rather, Stusalitus was "required to present evidence that his claim of right amounted to . . . a facially valid authorization."

- 7 -

*Id.*  He failed to do so.[5]  He presented no evidence that someone with legal authorization to grant him permission to remain on the property after he was told to leave was present and allowed him to remain.  Accordingly, the trial court did not err in finding that Stusalitus failed to carry his burden of proving a bona fide claim of right to remain in the courthouse lobby after being told to leave.

2. The evidence was sufficient to prove that Stusalitus was given a reasonable opportunity to leave the courthouse.

In the context of trespass, "[a] person who has been ordered to leave must do so within a reasonable amount of time under the circumstances." *Carter v. Commonwealth*, 300 Va. 371, 375 (2021).  Stusalitus argues that Sergeant Rupert did not afford him a reasonable opportunity to comply with the demand to leave before initiating the arrest.  His contention is misguided for a more fundamental reason: he never began to comply at all.  Contrary to his assertion, Stusalitus did not turn and walk directly toward the door "on his own free will" when Sergeant Rupert unequivocally directed him to leave under threat of arrest.  Instead, he continued to argue with the sergeant, asking, "Are you sure about that?"  And when Sergeant Rupert responded, "yes," and asked Stusalitus if he was ready, Stusalitus again continued to argue, asking, "Do you know that's illegal?"  Those are not the acts of a person in the process of complying with a directive to leave; they were an affirmative rejection of it.  The reasonable-opportunity rule exists to protect a person who needs time to physically depart, not to provide an occasion to relitigate one's right to remain.  Sergeant Rupert afforded Stusalitus a reasonable amount of time to leave and, instead of doing so, Stusalitus used that time to continue arguing with the sergeant.  As discussed further below, that choice was not accidental.  It reflected the same willful intent that pervaded the entire encounter.  Accordingly, we do not disturb the trial court's finding.

---

[5] Indeed, his claim that Code § 18.2-119 "cannot apply to a citizen upon public property," because "citizens enjoy authority of law to be upon public property," contradicts the well-settled principle that "trespass statute[s] . . . appl[y] to publicly owned property other than thoroughfares." *Johnson v. Commonwealth*, 212 Va. 579, 582 (1972).

3.  The evidence was sufficient to prove the element of willful intent.

"Intent in fact is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be shown by a person's conduct or by his statements." *Austin v. Commonwealth*, 60 Va. App. 60, 66 (2012) (quoting *Vincent v. Commonwealth*, 276 Va. 648, 652 (2008)). Although Code § 18.2-119 is silent as to intent, the statutory offense of criminal trespass "has been uniformly construed to require a willful trespass." *Lawson v. Commonwealth*, 35 Va. App. 610, 616 (2001). "'Willful' generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful." *Ellis v. Commonwealth*, 29 Va. App. 548, 554 (1999). It "denotes 'an act which is intentional, or knowing, or voluntary, as distinguished from accidental.'" *Id.* (quoting *Snead v. Commonwealth*, 11 Va. App. 643, 646 (1991)). "Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Austin*, 60 Va. App. at 66 (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)).

Here, Stusalitus admitted knowing that he was not allowed to bring his cell phone into the courthouse. Indeed, on the day of the offense, he was there to check on the status of his application for permission to take his cell phone inside the building. Despite this, Stusalitus took his phone through the security checkpoint and attempted to enter the interior of the building with it. During the ensuing exchange with Sergeant Rupert, Stusalitus was told several times that he could not pass through the main entrance with the cell phone and that his options were to lock the phone up or leave the building. He refused both options. Sergeant Rupert warned Stusalitus that he would be asked to leave if he continued to refuse those options and arrested for trespass if he did not comply. Instead of leaving when Sergeant Rupert unequivocally directed him to under threat of arrest, Stusalitus continued to argue with the sergeant. On these facts, the trial court's finding that

Stusalitus's conduct was willful and intentional is not plainly wrong or without evidence to support it. Accordingly, we leave that finding undisturbed.

B. *Stusalitus did not preserve his constitutional challenge to Code § 18.2-119.*

Stusalitus contends that Code § 18.2-119 is unconstitutional as applied to his conduct. Specifically, he argues that he did not use force, that he did not block other citizens "in utilizing the property," that he did not damage any property, and that "[t]here was no interference with the owner's use of the property." He also notes that he was allowed to return to the courthouse during the pendency of the proceedings and even encountered Sergeant Rupert again without incident, which suggests that "his ability to be on the property was never removed." We do not consider these arguments, however, because he did not preserve the issue for appeal.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)).

Stusalitus concedes that he did not raise his constitutional argument in the trial court. Nonetheless, he asks us to invoke the ends of justice exception. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Redman*, 25 Va. App. at 221. "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210

(quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). The "exception requires proof of an error that was 'clear, substantial and material.'" *West*, 43 Va. App. at 338 (quoting *Brown v. Commonwealth*, 8 Va. App. 126, 132 (1989)). "Virginia courts applying the ends-of-justice exception require a defendant to present not only a winning argument on appeal but also one demonstrating that the trial court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle*, 54 Va. App. at 513). "Where the record does not affirmatively establish error, we cannot invoke the ends of justice exception to Rule 5A:18." *Smith v. Commonwealth*, 59 Va. App. 710, 724 (2012).

Stusalitus has failed to carry his burden of proving a manifest injustice. Although he asks that we consider his constitutional argument under the ends of justice exception to Rule 5A:18, he fails to put forth any argument as to how the ends of justice exception applies in his case. Nor does he offer any case law in support of his assertion that his failure to properly preserve his constitutional argument for appeal has resulted in a manifest injustice—and we fail to see one. Stusalitus was prohibited by signage and by several deputies from bringing his cell phone into the building. Rather than accepting that, he held the deputies up from their normal duties and engaged in a ten-minute confrontation to discuss "hypothetical" scenarios that had nothing to do with his constitutional rights. The trial court did not accept such gamesmanship, nor do we. And we will not apply the ends of justice exception to Rule 5A:18 merely on Stusalitus's bare assertion that the exception applies. The argument is waived, and we will not consider it.

CONCLUSION

For the foregoing reasons, Stusalitus's trespassing conviction is affirmed.

*Affirmed.*

- 11 -